[No. 43484.   En Banc.   March 18, 1976.]

CARL R. LANGE, ET AL, *Appellants*, v. THE STATE OF
WASHINGTON, *Respondent*.

*Wayne C. Booth* (of *Beresford, Booth, Lehne & Mc-
Kisson*), for appellants.

*Slade Gorton, Attorney General*, and *William G. Boland,
Assistant*, for respondent.

UTTER, J.—Appellants Lange, et al, in October 1970,
brought an inverse condemnation action alleging there had
been a "de facto" taking of their property by the State of
Washington, Department of Highways. Approximately 1

year later, the State filed a condemnation action to acquire appellants' property for highway purposes. The trial court dismissed the inverse condemnation claim and awarded appellants compensation based upon the value of their property at the time of trial in the eminent domain proceeding. The issue presented is whether, under the facts of this case, appellants' property is to be valued as of a date earlier than the time of trial. We hold that it may, reverse the trial court judgment, and remand for further findings.

Appellant Lange has been engaged for 25 years in the business of purchasing, subdividing, and developing real property into residential building sites. The assemblage of 15 parcels, which is the subject of this appeal, was acquired by Lange in several independent purchases between 1958 and 1965. In preparation for the development of this land, appellant Lange petitioned for and had the property annexed to the local sewer district in 1966. He also imposed on all of the land, by deed conveyance, mutual easements for sewer, water, and access. Some surveying and grading of streets over a portion of the area was undertaken as well.

Late in 1966, Lange noticed surveying engineers on his land and was advised that they were under contract with the State, which proposed to run a highway through Lange's property. In February 1967, the State Highway Department delivered to the City of Des Moines, to which appellants' land was eventually annexed, an aerial photograph with an overlay showing the proposed route of state highway SR 509. In May 1967, the department issued a press release, published in the Seattle Times, stating that federal and state funds were to be used for acquisition of land along the proposed route. On May 25, 1967, in response to an inquiry by Lange, the highway department stated that the proposed highway would affect virtually all of the Lange property and that the present schedule called for right-of-way purchases beginning in late 1968.

On July 6, 1967, the State Highway Department held a public hearing for route corridor selection at which depart-

ment officials advised the public and Mr. Lange, who was present, that property acquisition, including the Lange property, would be completed in 1969. In March 1969, the department issued a proposed design and limited access proposal. At a public hearing in May 1969, the department indicated there would be a delay in acquisition of appellants' property until some undetermined date. On July 22, 1969, the highway commission entered an order approving the design, a copy of which was received by appellant Lange on October 9. In October 1969, the State purchased a large tract a few blocks north of appellants' property for a price of $431,071.50. In late October, the highway was approved as an advance right-of-way project. On December 1, 1969, the State issued its formal notice under RCW 47.28.025 and 47.28.026 describing the location and width of the proposed highway. This notice was filed with the county auditor on January 16, 1970.

For several months in 1970, appellants communicated with the highway department about the schedule for acquisition of their property. Appraisal of the Lange property began on September 9, 1970. On October 30, 1970, appellants instituted their inverse condemnation action. Between February 25 and July 15, 1971, the highway project was temporarily stopped due to withdrawal of approval by the City of Des Moines. On September 29, 1971, the condemnation process began and a notice of condemnation was filed in superior court in early October 1971. On November 30, 1971, the State paid possession and use money in the sum of $114,000 into the registry of the court. A consolidation of the inverse condemnation and condemnation actions was stipulated and the case came on for trial without a jury on September 25, 1972. In its memorandum opinion, the trial court ruled that no "taking" of appellants' property occurred prior to the institution of condemnation proceedings by the State and that the valuation date was the date of trial. As compensation for the appropriation of their property, appellants were awarded $134,911.

Appellants contend that the cumulative effect of the ac-

tions of the State in surveying, issuing press releases, acquiring nearby property, and implementing its plans for the highway amounted to "condemnation blight" and a "taking" of their property in December 1969. *See* 4 *Nichols on Eminent Domain* § 12.3151[5] (3d rev. ed. 1975). In support of their position, appellants rely upon *Drakes Bay Land Co. v. United States*, 424 F.2d 574 (Ct. Cl. 1970); *Foster v. Detroit*, 254 F. Supp. 655 (E.D. Mich. 1966), *aff'd*, 405 F.2d 138 (6th Cir. 1968); *Madison Realty Co. v. Detroit*, 315 F. Supp. 367 (E.D. Mich. 1970); *In re Urban Renewal, Elmwood Park Project*, 376 Mich. 311, 136 N.W.2d 896 (1965), and similar cases. We agree with the trial court that these cases are distinguishable from the present one in that they involved unwarranted delay coupled with affirmative action by the condemning authority resulting in a decrease in property value, actual encouragement of neighborhood deterioration by the condemning authority, direct interference by the condemning authority to prevent development by the landowner, or other abusive conduct. In this case, the trial court acknowledged the delay in the commencement of condemnation proceedings to acquire the Lange property, but found that the delay was not unreasonable in light of the problems encountered. There was no evidence of intentional delay on the part of the State so as to obtain the property at a depreciated value. The court specifically found that no action was taken by the State here which is not taken in every highway project and that a "taking" of appellants' property did not occur prior to the institution of the eminent domain proceeding. *Buffalo v. J.W. Clement Co.*, 28 N.Y.2d 241, 321 N.Y.S.2d 345, 269 N.E.2d 895 (1971); *Klopping v. Whittier*, 8 Cal. 3d 39, 500 P.2d 1345, 104 Cal. Rptr. 1 (1972); *Empire Constr., Inc. v. Tulsa*, 512 P.2d 119 (Okla. 1973), *cert. denied*, 414 U.S. 1094, 38 L. Ed. 2d 551, 94 S. Ct. 725 (1973).

■ However, these conclusions of themselves do not require affirmance of the trial court's judgment nor should they exhaust our inquiry in cases such as this. When private property is taken for public use, our constitution re-

quires the payment of "just compensation." Const. art. 1, § 16. In the scheme established by the legislature for the procurement of land by the State, the amount of compensation required to satisfy the constitutional mandate is a matter for judicial determination. RCW 8.04.092, 8.04.110. In discharging this obligation, the courts must be guided by considerations of fairness and justice. "The constitutional requirement of just compensation derives as much content from the basic equitable principles of fairness . . . as its does from technical concepts of property law." *United States v. Fuller*, 409 U.S. 488, 490, 35 L. Ed. 2d 16, 93 S. Ct. 801 (1973); *cf. United States v. Virginia Elec. & Power Co.*, 365 U.S. 624, 5 L. Ed. 2d 838, 81 S. Ct. 784 (1961). The reason for the existence of the just compensation language in the state and national constitutions is to insure the fair treatment of individuals whose rights in property must at times be subordinated to the needs of society as a whole. *State Rd. Dep't v. Chicone*, 158 So. 2d 753 (Fla. 1963); *see generally* Michelman, *Property, Utility, and Fairness: Comments on the Ethical Foundations of "Just Compensation" Law*, 80 Harv. L. Rev. 1165 (1967).

It is well established that the condemnee is entitled to be put in the same position monetarily as he would have occupied had his property not been taken. *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 473-74, 35 L. Ed. 2d 1, 93 S. Ct. 791 (1973); *Redevelopment Authority v. Lieberman*, ............ Pa. ............, 336 A.2d 249, 251 (1975); *United States v. 564.54 Acres of Land*, 506 F.2d 796, 799 (3d Cir. 1974). "While the owner is forced to sell, he is not to receive by reason of that fact a lesser amount than the property would fairly bring upon the market." *Chelan Elec. Co. v. Perry*, 148 Wash. 353, 358, 268 P. 1040 (1928). In carrying out our duty to achieve fairness in condemnation awards, we have recognized that just compensation must be calculated from the standpoint of what the property owner loses by having his property taken, not by the benefit which the property may be to the condemnor. *State ex rel. Polson Logging Co. v. Superior Court*, 11 Wn.2d 545,

570, 119 P.2d 694 (1941). The condemnor "must make *full* compensation for what he takes." (Italics ours.) *State ex rel. Polson Logging Co. v. Superior Court, supra* at 569.

We have repeatedly recognized that "property," as used in the constitutional phrase, encompasses many rights.

"Property in a thing consists not merely in its ownership and possession, but in the unrestricted right of use, enjoyment and disposal. Anything which destroys any of these elements of property, to that extent destroys the property itself. The substantial value of property lies in its use. If the right of use be denied, the value of the property is annihilated and ownership is rendered a barren right."

*Ackerman v. Port of Seattle*, 55 Wn.2d 400, 409, 348 P.2d 664, 77 A.L.R.2d 1344 (1960); *Martin v. Port of Seattle*, 64 Wn.2d 309, 391 P.2d 540 (1964); *In re Seattle*, 81 Wn.2d 652, 504 P.2d 292 (1972). Article 1, section 16 was intended to protect all the essential elements of ownership which make property valuable. *Great N. Ry. v. State*, 102 Wash. 348, 173 P. 40 (1918). "Ownership" in property has long been conceived as a "complex of rights" including the right to use and enjoy the thing owned and the "right to consume, destroy or alienate the thing." P. Fitzgerald, *Salmond on Jurisprudence* 246-47 (12th ed. 1966).

In addition, in determining the extent of protection afforded by the just compensation provision, the particular facts of the case are significant. *Wandermere Corp. v. State*, 79 Wn.2d 688, 488 P.2d 1088 (1971); accord, *Aronson v. Sharon*, 346 Mass. 598, 195 N.E.2d 341 (1964). "Determining just compensation is the ultimate objective of condemnation proceedings. . . . [J]ust compensation is to be determined by equitable principles and . . . its measure varies with the facts." *State Rd. Dep't v. Chicone, supra* at 757; *see also In re New York*, 58 Misc. 2d 1073, 298 N.Y.S.2d 429, 430 (1968).

In the usual eminent domain proceeding, the property is valued as of the date of the trial. *State v. Williams*, 68 Wn.2d 946, 416 P.2d 350 (1966); *In re Medina*, 69 Wn.2d 574, 418 P.2d 1020 (1966). This rule has been modified,

however, when its application would be unfair in light of the particular circumstances. In *Pierce County ex rel. Bellingham v. Duffy*, 104 Wash. 426, 176 P. 670 (1918), the court approved an instruction which asked the jury to disregard the increase in property value occasioned by the proposed construction of an army post on the land. *See also Enoch v. Spokane Falls & N. Ry.*, 6 Wash. 393, 33 P. 966 (1893); *State v. Corvallis Sand & Gravel Co.*, 69 Wn.2d 24, 416 P.2d 675 (1966). The general rule is that, if the property was probably within the scope of the project from the time the government was committed to it, no enhancement in value attributable to the project is to be considered in awarding compensation. *United States v. Miller*, 317 U.S. 369, 87 L. Ed. 336, 63 S. Ct. 276, 147 A.L.R. 55 (1942).

It is similarly widely recognized that any decrease in property value attributable to the project for which the eminent domain proceeding is instituted is to be disregarded in computing just compensation. *United States v. Virginia Elec. & Power Co.*, supra; *Tharp v. Urban Renewal & Community Dev. Agency*, 389 S.W.2d 453 (Ky. Ct. App. 1965); *Congressional School of Aeronautics, Inc. v. State Rds. Comm'n*, 218 Md. 236, 146 A.2d 558 (1958); 4 *Nichols on Eminent Domain* § 12.3151 (3d rev. ed. 1975). This rule also applies to situations in which the condemnation activities themselves have depreciated property prior to the institution of formal eminent domain proceedings.[1] In *Bekos v. Masheter*, 15 Ohio St. 2d 15, 19, 238 N.E.2d 548 (1968), the landowner's parcel was in the path of a pro-

---

[1]RCW 8.26.180 strongly supports, but does not compel this conclusion. That section provides as follows:

"Every state agency and local public body acquiring real property in connection with any program or project shall, *to the greatest extent practicable*, be guided by the following policies:

". . .

"(3) . . . Any decrease or increase in the fair market value of the real property to be acquired prior to the date of valuation caused by the public improvement for which such property is acquired, *or by the likelihood that the property would be acquired* for such improvement . . . will be disregarded in determining the compensation for the property." (Italics ours.)

posed highway and the state began acquiring properties in the immediate vicinity. The deterioration of the neighborhood caused by the acquisitions depreciated the condemnee's property. The court applied the rule noted above to these circumstances and concluded that the just compensation requirement would be satisfied if valuation were made on a date "reasonably related to events in the vicinity of the property taken whereby the appropriating authority's activity contributed to or caused substantial depreciation of the property taken." In *Uvodich v. Arizona Bd. of Regents*, 9 Ariz. App. 400, 453 P.2d 229 (1969), the university announced an expansion program which required the purchase of 13 residential blocks. The university proceeded during a 10-year period to purchase or condemn each parcel in a systematic fashion, creating sites for university buildings, but depreciating the defendant's property at the same time. The court held that such action did not constitute a "taking or damaging" of property, but specifically suggested that the owners would be able to recoup such depreciation in the eminent domain proceeding. The court concluded that "the time as of which the evaluation of the property should be made must comport with the peculiar facts and circumstances of the case so as to assure the property owner compensation which is just . . ." *Uvodich v. Arizona Bd. of Regents, supra* at 406.

In *Matlow Corp. v. State*, 36 App. Div. 2d 461, 321 N.Y.S.2d 734 (1971), appellant's property was appropriated and valued in 1966, although the value was then depreciated because of the condemnation 5 years earlier of nearby railroad facilities important to appellant's business. The court remanded for a new trial to determine whether appellant's property was probably within the scope of the project when the State was committed to it. If it were, the court noted, no adverse effect on value of the land resulting from the implementation of the project for which the condemnation was undertaken would be allowed to reduce the appellant's compensation. *See also Lipinski v. Lynn Redevelopment Authority*, 355 Mass. 550, 246 N.E.2d 429 (1969);

*Jersey City Redevelopment Agency v. Kugler*, 58 N.J. 374, 277 A.2d 873 (1971); 4 *Nichols on Eminent Domain* § 12.3151 [5] (3d ed. rev. 1975).

In this case, the State acknowledges the principle established by these and other cases when it states that the value of the property is to be estimated without reduction for depreciation caused by the actions of the condemnor in anticipation of the improvement. *See* Annot., 37 A.L.R.3d 127, 132 (1971). Indeed, the trial court expressly embraced this rule but concluded that the decline in value was caused not by the actions of the condemnor but by a general decline in property values in the area from 1969 to 1971-72.

In some cases, the owner of property taken for public use must suffer the loss occasioned by a market decline prior to appropriation by the government. *See Klopping v. Whittier*, 8 Cal. 3d 39, 500 P.2d 1345, 104 Cal. Rptr. 1 (1972).[2] In other circumstances the same factors do not exist and such a rule would not be fair and equitable. *See State v. Clarke*, 135 So. 2d 329 (La. App. 1961). In this case, the practical effect of the State's action is that appellants suffered a loss in compensation due to the condemnation just as certainly as if the condemnation itself had caused the decline in his property's value.

The loss was a direct consequence of the State's action since after December 1969 the marketability of appellants' land was substantially impaired. The record indicates that this marketability was affected by the surveys, public announcements, and hearings, followed by the purchase of a tract north of appellants' parcel in October 1969. On De-

---

[2]In *Klopping v. Whittier*, 8 Cal. 3d 39, 51, 500 P.2d 1345, 104 Cal. Rptr. 1 (1972), plaintiffs were seeking to recover only loss of rental value caused by the allegedly unreasonable acts of the condemning authority. The court noted that in the absence of unreasonable acts, the condemnee may have to bear a "slight incidental loss" in order to allow public announcements for meaningful public participation in condemnation decisions. Appellant's loss here is not of the same nature or the same magnitude. Moreover, the valuation date in *Klopping* was the date of the service of summons in the eminent domain action. Under Washington's date of trial valuation, a longer period elapses in which a decline in market value adversely affects the landowner.

cember 1, 1969, the State, pursuant to RCW 47.28.025, executed formal notice establishing the location of the proposed highway, including most of appellants' land. Under RCW 47.28.026 no owner of property within the limits of such a highway may erect any buildings or make any improvements on that land. The undisputed evidence indicates that after November 1969 appellants could not effectively sell the property as building sites, could not proceed with development of the property, and could not borrow money on the property. The property had no income potential, yet appellants were obligated to pay property taxes.

■  Such a result was clearly foreseeable in this situation because the property was vacant and in the process of being developed. Appellant Lange had been engaged for 25 years in the business of developing real property for residential building sites. Prior to any knowledge of the highway project on the part of appellant or the public, appellant had his property annexed to the local sewer district, undertook to survey and grade streets over a portion of the tract, and imposed by deed conveyance on all of the land, mutual easements for sewer, water, and access. Given appellant's business, his property was akin to an inventory of goods. In these respects, appellant occupies a position different from that of the typical owner of a house or store which is the subject of condemnation activity. The home or store owner does not purchase the land with the sole objective of developing and marketing the land and will not take major steps to accomplish this objective. The impairment of marketability, financing, and income is not as clearly foreseeable in such circumstances. The home or store owner may suffer from a general market decline but his sole purpose is not destroyed, since he may continue to use the property, derive some income or benefit from it, and thus moderate the market decline. See Swampscott v. Remis, 350 Mass. 523, 215 N.E.2d 777 (1966) (residential and recreational use still available to owner of oceanfront property following city's resolution to condemn the parcel).

In this case, the effect of the condemnation activity was

to chain appellant to his land in a falling real estate market. Once the State manifested its unequivocal intent to appropriate the Lange property, appellants were precluded from exercising their business judgment and selling the property before the market fell further. Moreover, appellants were precluded from taking any steps to counteract the market decline by making improvements on the land or otherwise changing its use. Thus, appellants were deprived of the most important incidents of ownership, the rights to use and alienate property. In addition, because the condemnation did in fact take place, appellants were prevented from holding their property, as other owners would be able to do, until economic conditions improved and market values rose again.

Under these circumstances the loss suffered is so closely connected to the condemnation itself that our constitutional concern for truly just compensation requires valuation in an eminent domain proceeding at a time earlier than the date of trial. This conclusion is necessary if the condemnee is to be placed in the same position monetarily as he would have occupied had his property not been taken. *Cf. Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 35 L. Ed. 2d 1, 93 S. Ct. 791 (1973). The facts of this case establish the elements of the rule. For the time of valuation to be advanced, marketability must be substantially impaired and the condemning authority must have evidenced an unequivocal intention to take the specific parcel of land. The special use of the land by the owner must be acquiring and holding the property for subsequent development and sale. Further, the owner must have taken active steps to accomplish this purpose. A property owner who purchased land or took steps to market it in contemplation of the condemnation could not insulate himself from a later general decline in market values and benefit from the holding in this case.

The facts here bring this case within the rule that valuation of property in a condemnation proceeding should disregard the depreciation attributable to the acts of the con-

demning authority. Therefore, we reverse the judgment of the trial court and remand the case for a valuation of appellants' property as of December 1, 1969.

STAFFORD, C.J., and FINLEY, ROSELLINI, HUNTER, HAMIL-TON, WRIGHT, BRACHTENBACH, and HOROWITZ, JJ., concur.

Petition for rehearing denied June 7, 1976.