[No. 45817. En Banc. October 9, 1980.]

TOM E. PETERSEN, ET AL, *Appellants*, v. THE PORT OF SEATTLE, *Respondent.*

*Schweppe, Doolittle, Krug, Tausend & Beezer,* by *Dexter A. Washburn, Jones, Grey & Bayley,* by *E. Michele Moquin,* and *Short, Cressman & Cable,* by *William K. McInerney, Jr.,* for appellants.

*Bogle & Gates, Kimberly W. Osenbaugh, Sandra R. Cribbs,* and *James A. Smith, Jr.,* for respondent.

HICKS, J.—This direct appeal concerns an inverse condemnation action started in November 1974, against the Port of Seattle. The Petersens (plaintiffs/appellants) owned and resided upon property located about 2 miles south of Sea–Tac Airport since before the airport was opened. They seek to recover the diminished value of their property resulting from the operation of the airport by defendant/cross–appellant Port of Seattle.

It is pertinent to note that the Port's policy when acquiring property in the vicinity of the airport on a negotiated voluntary sale basis was to pay unimpacted value, *i.e.,* the value the property would have had absent the airport. For property whose airport impact damage had been determined by judgment prior to the Port's acquisition of it, the formula used in purchasing the property was unimpacted market value less the previous judgment paid.

February 27, 1978, a proceeding was begun in King County Superior Court testing the validity of various defense issues raised by the Port. Several days of hearings followed. May 30, 1978, by formal order, the trial court rejected the Port's claim that the Petersens' suit was time barred by any statute of limitation or that a prescriptive avigation right had been acquired in their property through operation of the airport.

The trial to determine the amount of compensation, if any, due the Petersens was scheduled for August 7, 1978. That trial was never held. Instead, a judgment on agreed facts was entered October 19, 1978. That judgment awarded the Petersens $50,000 for diminution of the value of their property resulting from the operation of the airport from its inception. Additionally, the Petersens claimed attorney

and expert witness fees in an amount of $41,500. The Port stipulated that amount to be reasonable, but it denied any responsibility to pay the fees. The claim was refused by the trial court.

March 10, 1978 (after the conclusion of the hearing beginning February 27 and substantially more than 30 days before the scheduled August 7 trial date), the Port made a written settlement offer to the Petersens. The offer was refused. The judgment they eventually obtained did not exceed the March 10 settlement offer by 10 percent or more. *See* RCW 8.25.075.

The Petersens appeal the denial of attorney and expert witness fees. The Port cross–appeals the May 30 order denying its statute of limitations and prescriptive right defense.

## STATUTE OF LIMITATION

The Port's cross appeal raises a threshold question: Does a 10–year statute of limitation apply to an inverse condemnation suit? If it does, is any portion of the Petersens' claim barred?

■ Initially, we encounter conceptual problems. The measure of compensation awarded a successful plaintiff in inverse condemnation proceedings is the diminution of the fair market value of the property caused by the governmental taking or damaging. *Highline School Dist. 401 v. Port of Seattle,* 87 Wn.2d 6, 548 P.2d 1085 (1976). As a general proposition, the diminished value is fixed as of the date of trial. *Lange v. State,* 86 Wn.2d 585, 590, 547 P.2d 282 (1976). From that premise, it follows that an uncompensated decline in the market value of the property measured at some date prior to initiation of the inverse condemnation suit requires no special consideration in the current action being prosecuted.

■ In this instance for example, the total compensation for the governmental taking or damaging of the Petersen property is determined by the decline in value of the property as measured at the time of trial. Less intensive airport

activity in prior years which may have diminished the value of plaintiffs' property at that time, if uncompensated, is included within the diminished value caused by airport activity ongoing at the time of the present suit. This activity is demonstrably greater than in earlier years and, consequently, more damaging. Because the taking or damaging of plaintiffs' property is of constitutional magnitude, mere passage of time alone does not bar plaintiffs' cause of action. *Ackerman v. Port of Seattle,* 55 Wn.2d 400, 405, 348 P.2d 664, 77 A.L.R.2d 1344 (1960).

A 10–year period of time, however, together with the requisite elements of adverse possession would, in a case such as this, have vested the Port with a prescriptive avigation right in plaintiffs' property. That avigation easement, if prescriptively acquired, would not be compensable. *Highline School Dist. 401 v. Port of Seattle, supra* at 15. Enhanced airport activity following acquisition of an adverse right or a judgment for a damaging, which activity causes further damage, would, of course, be compensable. *Highline.*

As early as *Aylmore v. Seattle,* 100 Wash. 515, 171 P. 659 (1918), this court recognized that a landowner's right to just compensation for a taking of his land is bottomed on Const. art. 1, § 16 (amendment 9), and may not be barred merely by the passage of time. In *Aylmore,* at page 519, we quoted with approval:

> "Where the constitution either expressly, or as interpreted by the courts, requires compensation to be first made for property taken for public use, a law which casts the initiative upon the owner and requires him to prosecute his claim for compensation within a time limited or be barred, is invalid. When under such a constitution property is appropriated to public use without complying therewith, the owner's right to compensation is not barred, except by adverse possession for the prescriptive period." Lewis, Eminent Domain (3d ed.), § 966.

The court reasoned that until title is lost by adverse possession, the owner "should have the right to maintain an action to recover that which represents the property itself."

*Aylmore,* at 523. A rather cogent argument is presented in *Aylmore* that entities clothed with the power of eminent domain should not be permitted to acquire the property of a private citizen by adverse possession and thus avoid payment of just compensation. While that is not the law of this state, it is a persuasive reason not to bar a property owner from receiving compensation merely by the passage of time. If, however, a right in property is acquired by a governmental entity by adverse possession, the owner's right to compensation is lost. *State v. Stockdale,* 34 Wn.2d 857, 210 P.2d 686 (1949); *see generally* Annot., *Acquisition of Title to Land by Adverse Possession by State or Other Governmental Unit or Agency,* 18 A.L.R.3d 678 (1968).

Our constitution requires that just compensation be paid a landowner in the event of either a governmental "taking" or "damaging" of property. *Martin v. Port of Seattle,* 64 Wn.2d 309, 391 P.2d 540 (1964), *cert. denied,* 379 U.S. 989, 13 L. Ed. 2d 610, 85 S. Ct. 701 (1965). In *Highline School Dist. 401 v. Port of Seattle, supra,* the school district assigned error to a trial court ruling that a statute of limitation barred a portion of its claim and urged that no limitation period applied. We noted, by virtue of the doctrine of prescription, a 10-year period is applicable to inverse condemnation suits and stated:

> Consequently, the landowner may recover the total damage resulting from all of those interferences which have not been eliminated as bases for liability by the acquisition of a prescriptive right. In other words, an inverse condemnation action . . . accrues when the landowner sustains any measurable loss of market value and the recovery may be had for the total loss of value which is both attributable to the interference and sustained during the 10-year period preceding the commencement of the action.

*Highline,* at 15.

Extrapolating from *Aylmore* and *Martin,* we conclude the Port must prove all elements of a prescriptive right to bar the Petersens' claim. Absent such prescriptive right, their claim for just compensation is not affected by passage

of time. If plaintiffs show a governmental interference with their land and a resultant decline in its market value, they are entitled to the remedy of just compensation.

The Port, however, may avoid the remedy, or a portion thereof, only if it affirmatively establishes its acquisition of a prescriptive avigation right in the Petersens' property. Proof of such prescriptive right necessarily includes a showing of uninterrupted hostile use for 10 years which has been open and notorious. *Krona v. Brett,* 72 Wn.2d 535, 433 P.2d 858 (1967).

### HAS THE PORT ACQUIRED A PRESCRIPTIVE RIGHT IN THE PETERSENS' PROPERTY?

In the present case, the plaintiffs concede the existence for the required time of all elements of a prescriptive right, except "hostility". The trial court, in its findings of fact, found the Port's use of the air space around and over the Petersen property had not been hostile. Consequently, it concluded that the Port had not acquired a prescriptive avigational right in the property and that the Petersens were entitled to just compensation.

■■ The trial court based its finding of nonhostility primarily upon proof of the Port's policy of paying unimpacted value to voluntary sellers of land around the airport which the Port wished to acquire. Further, the Port's active encouragement of, and participation since 1973 in, a community committee designed to find alternative remedies for land adversely affected by airport activity also contributed to the trial court's conclusion. Though the court's determination of "nonhostility" was denominated a finding of "fact", we have recently held that such "findings" on elements of adverse possession are mixed questions of law and fact not binding on this court. *Peeples v. Bellingham,* 93 Wn.2d 766, 613 P.2d 1128 (1980).

In the instant case, however, the facts pertinent to this issue are: (1) the Port pays unimpacted value to surrounding landowners; and (2) the Port participated in the Sea–

Tac Communities Plan Study which was designed to formulate alternative remedies for adversely affected properties. Further, we also consider that a use of property, at its inception, is presumed to be permissive. *Gray v. McDonald,* 46 Wn.2d 574, 283 P.2d 135 (1955).

In any event, in early years the airport was used exclusively by propeller–driven aircraft. The testimony was that this usage, while annoying at. times, was not appreciably damaging. When jet–powered aircraft began to be used, an entirely new noise environment was presented.

▇ Ever increasing usage of Sea–Tac airport by jet aircraft began in the 1960's and continues to this day. Year by year, from 1964 to 1974 when the instant action was filed, larger and noisier aircraft and more of them utilized the airport. The Port's own records demonstrate this. Thus, even if the trial court had found some kind of pre–1964 prescriptive easement, it would not have been for the type and number of aircraft which used the airport after that date and, consequently, it would not have decreased the Petersens' damage in 1974.

Accordingly, while we agree with the trial court's determination of nonhostile use on the part of the Port, we are also of the view that had there been a pre–1964 prescriptive easement acquired, it would not have availed the Port a defense under the circumstances of this case. We hold that the Port has not demonstrated it acquired a prescriptive right to an avigation easement over the Petersen property.

### CLAIM FOR ATTORNEY AND EXPERT WITNESS FEES

The Petersens' appeal is principally concerned with the denial of their claim to $41,500 as attorney and expert witness fees. In 1974, when this action was commenced, RCW 8.25.075 provided that a successful plaintiff in an inverse condemnation suit could recover reasonable attorney and expert witness fees without qualification. Laws of 1977, 1st Ex. Sess., ch. 72, § 1, p. 296, amended the statute to provide

that fee awards are contingent upon a plaintiff's obtaining a judgment exceeding by at least 10 percent any written settlement offer of the defendant which was made 30 or more days before trial.

The Petersens first contend their claim for fees is founded upon their constitutional right to just compensation. The prerequisites to recovery of fees imposed by the 1977 amendment are therefore alleged to be unconstitutional. We reject this contention.

■ Just compensation, in a constitutional sense, is defined as fair market value. While the determination of market value must be fair and equitable, absent a statute, fees are not recoverable as an aliquot part of just compensation under the constitution. *Lange v. State,* 86 Wn.2d 585, 547 P.2d 282 (1976); Annot., *Eminent Domain— Attorney Fees,* 26 A.L.R.2d 1295 (1952).

The legislature has recognized that awards in eminent domain proceedings, though constitutional, may fall short of complete compensation because of litigation expenses. Consequently, it has enacted laws designed to encourage settlement and limit extended litigation expense. *State v. Roth,* 78 Wn.2d 711, 479 P.2d 55 (1971). Because the right to fees is determined by the legislature, any such right granted by the legislature may be reasonably conditioned as is done by the requirements of RCW 8.25.075, as amended.

■ The Petersens next argue that RCW 8.25.075, in its original form, applies because this action was initiated in 1974, before the 1977 amendment. *In re Bellingham,* 10 Wn. App. 606, 608, 519 P.2d 1330 (1974), considered a similar contention and the Court of Appeals stated:

the right to . . . attorney fees, as well as the determination of the amount thereof, is governed by the statute in force at the termination of the action, rather than at the time of its commencement.

We agree with this statement and, therefore, RCW 8.25.075 in its amended form applies here.

The Port's March 10 offer was within 10 percent of the judgment eventually entered for the Petersens. The question then becomes: Was the offer made 30 days before "trial"?

As above noted, the proceedings beginning on February 27, 1978, decided, adversely to the Port, issues of defense involving both a statute of limitation and acquisition of a prescriptive right. Thereafter, on March 10, the Port made a settlement offer in writing to the Petersens. The offer was refused. Trial to determine the amount of compensation was scheduled for August 7, but it was not held. A judgment on agreed facts was entered October 19, 1978.

The trial court, in its judgment on agreed facts, concluded that the offer was made "more than thirty days prior to the trial date scheduled to commence on August 7, 1978." The court, however, in rendering its oral opinion following the hearings which began February 27, stated: "This is the first of the hearings on bifurcated issues in which the plaintiffs sue for compensation for the alleged taking of a portion of their real property . . ." While the trial court concluded that the Port had met the requirements of RCW 8.25.075 and was not liable for attorney and expert witness fees, a majority of this court is inclined to disagree.

It is our view that the February 27 proceeding was the first portion of a bifurcated trial. Both parties, during the proceeding, referred to it as a "trial" and reserved opening statements. Several witnesses were called and subjected to direct and cross–examination resulting in four volumes of report of proceedings. Closing arguments were made to the court and the court rendered an oral opinion.

The Port's written offer was not made 30 days before the start of trial on February 27 and it is therefore liable for attorney and expert witness fees under RCW 8.25.075. This is in keeping with the legislative encouragement to avoid trials. In light of the legislative objective of settling rather than trying matters such as this, it seems anomalous to

contend that the evaluation of defenses requiring the taking of testimony for several days is not at least a portion of a trial.

As stated above, the parties have stipulated $41,500 to be the reasonable, recoverable attorney and witness fees and costs in this matter.

The trial court's order of May 30, 1978, is affirmed. The denial of attorney and expert witness fees is reversed.

Remanded for further proceedings not inconsistent herewith.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, and WILLIAMS, JJ., concur.

Reconsideration denied November 18, 1980.