# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

SHARON KAY and JIM HOWE,

        Appellants,

        v.

KING COUNTY SOLID WASTE
DIVISION, a municipal corporation,

        Respondent.

DIVISION ONE

No. 77935-4-I

UNPUBLISHED OPINION

FILED: June 3, 2019

DWYER, J. — Due to the negative impacts of a landfill operated by King County, nearby resident Sharon Kay brought a civil action in which she claimed that these effects amounted to a total taking of her property and, in the alternative, that these effects amounted to a partial taking.[1] After a trial, the jury found that Kay suffered a partial taking. Kay's subsequent request for an award of attorney fees was denied. Because her request was denied contrary to the letter and intent of the statute governing attorney fee awards in inverse condemnation actions, we reverse.

I

Sharon Kay lives in a house adjacent to the Cedar Hills Regional Landfill, a facility operated by the respondent King County Solid Waste Division (the County). In 2013, a pipeline break at the landfill led to the release of substantial

---

[1] Plaintiff Jim Howe brought unrelated causes of action against the King County Solid Waste Division. These claims are not at issue in this appeal.

amounts of toxic gas. Subsequently, Kay brought claims against the County for nuisance, trespass, negligence, inverse condemnation, strict liability, and negligent infliction of emotional distress. Before trial, the County made the following written settlement offer, providing for the purchase of Kay's property in exchange for the extinguishment of her inverse condemnation claim:

> Dear Ms. Kay and Mr. Howe,
>
> With this letter, King County makes the following offer to purchase your property:
>
> | | |
> |---|---|
> | **PURCHASER:** | King County, Department of Natural Resources and Parks—Solid Waste Division |
> | **SELLER:** | Sharon Kay or Sharon Kay and Jim Howe |
> | **PROPERTY ADDRESS:** | 1523 229th Ave SE, Issaquah, WA 98027, APN: 222306-9135 |
> | **PURCHASE PRICE:** | $552,000 |
>
> Should you accept King County's offer to purchase your property for the price listed above, the parties will then agree on a mutually acceptable purchase and sale agreement and closing.

Kay and Howe did not accept the offer. The parties proceeded to trial.

The jury made the following findings in its special verdict:

> QUESTION 6: Did the defendant's actions create an inverse condemnation partial taking of any of plaintiffs' properties?
>
> . . .
>
> Kay residential property            ANSWER: YES
>
> . . .
>
> QUESTION 8: For each property you answered "yes" on Questions 5 or 6, and/or Question 7, what is the fair market value of that property before the taking?
>
> . . .
>
> [ANSWER:] Kay residential property     $650,000
>
> . . .
>
> QUESTION 9: For each property you answered "yes" on Questions 5 or 6, and/or Question 7, what is the diminished fair market value after the taking?

. . .

[ANSWER:] Kay residential property       $585,000

. . .

QUESTION 10: As to any taking, what was the date that taking began?

. . .

[ANSWER:] Kay residential property       December 7, 2013

Following the verdict, the trial court entered judgment. The judgment provided that the inverse condemnation had commenced on December 7, 2013, that Kay was entitled to $65,000, the difference of her property's unimpaired fair market value and impaired value, and that prejudgment interest on these inverse condemnation damages totaled $31,221.37. The judgment did not award the County fee title to Kay's property.

The trial court summarily denied Kay's subsequent motion for an award of attorney fees and costs.

II

When, as here, an appeal concerns the interpretation of a statute, we review the trial court's decision de novo. State v. Costich, 152 Wn.2d 463, 470, 98 P.3d 795 (2004). Our primary objective is to give effect to the legislature's intent, derived by construing the language as a whole and giving effect to every provision. State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003). If the language is unambiguous, we give effect to that language alone, as the legislature is presumed to mean what it says. State v. Radan, 143 Wn.2d 323, 330, 21 P.3d 255 (2001). If, however, the legislature's intent cannot be discerned from the plain text of the statute, we "resort to principles of statutory construction, legislative history, and relevant case law to assist us in discerning

legislative intent." <u>Cockle v. Dep't of Labor & Indus.</u>, 142 Wn.2d 801, 808, 16 P.3d 583 (2001).

The Fifth Amendment to the United States Constitution provides that private property may not be taken for public use "without just compensation." Article 1, section 16 of the Washington Constitution similarly provides:

> No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner . . . which compensation shall be ascertained by a jury.

Two avenues of relief are available to property owners, the value of whose property is totally or partially taken by government action. The first is a traditional eminent domain proceeding, wherein the government body (condemnor) seeks or has already obtained actual ownership of, or an ownership right in, private property so as to use it for public benefit. <u>See, e.g.</u>, <u>Pub. Util. Dist. No. 2 of Grant County v. N. Am. Foreign Trade Zone Indus., LLC</u>, 159 Wn.2d 555, 565, 151 P.3d 176 (2007). In these cases, any settlement offer will necessarily be an offer to purchase the specific property right at issue. Because the condemnor is required to identify the specific property interest that it seeks to acquire, in contemplating settlement, the parties intend to place a value on the identified interest. Thus, when settlement discussions fail, a subsequently entered judgment will necessarily reflect the fair market value of the specific property right. <u>See State v. McDonald</u>, 98 Wn.2d 521, 525, 656 P.2d 1043 (1983). In such a case, a settlement offer can be easily compared to the final judgment, as each specifies a value for an interest that is conveyed by the judgment. <u>See City of Seattle v. Seattle-First Nat'l Bank</u>, 79 Wn.2d 490, 491, 487 P.2d 777 (1971).

In the end, in return for a payment, the condemnor receives both the extinguishment of the claim against it and conveyance and ownership of the identified specific interest in the property.

The second avenue of relief available to a property owner is an inverse condemnation action. An inverse condemnation occurs when the government takes or damages property without the formal exercise of the power of eminent domain. Dickgieser v. State, 153 Wn.2d 530, 534-35, 105 P.3d 26 (2005). Damages in an inverse condemnation case are equal to the amount the property has diminished in fair market value. Petersen v. Port of Seattle, 94 Wn.2d 479, 482-83, 618 P.2d 67 (1980). A successful plaintiff will remain the owner of the property at issue but is awarded damages to compensate for the diminished fair market value of the property. The decline in value is measured as of the time of trial. Petersen, 94 Wn.2d at 482.

In many inverse condemnation cases, the question of whether a taking has in fact occurred becomes an issue for the trier of fact; the condemnee avers that the condemnor has damaged or taken some, most, or all of the value of the condemnee's property. See, e.g., Sintra, Inc. v. City of Seattle, 131 Wn.2d 640, 648, 935 P.2d 555 (1997). Thus, unlike in an eminent domain action, where the specific property interest at issue is known and the existence of a taking is not disputed, in many inverse condemnation actions the parties dispute not only the extent of liability but also the amount of the property interest taken or damaged and the value thereof. When the jury finds that only a partial taking has occurred,

the condemnee receives damages for the diminished value of the property while retaining full title and ownership thereof.[2] See, e.g., Petersen, 94 Wn.2d at 481.

The legislature has provided further protection for property owners asserting or defending condemnation claims. "The legislature has recognized that awards in eminent domain proceedings, though constitutional, may fall short of complete compensation because of litigation expenses." Petersen, 94 Wn.2d at 487. To address this shortfall, RCW 8.25.070 provides for the payment of a condemnee's attorney fees in eminent domain actions. RCW 8.25.075 provides similar protections for those pursuing inverse condemnation actions.

> A superior court rendering a judgment for the plaintiff awarding compensation for the taking or damaging of real property for public use without just compensation having first been made to the owner shall award or allow to such plaintiff costs including reasonable attorney fees and reasonable expert witness fees, but only if the judgment awarded to the plaintiff as a result of trial exceeds by ten percent or more the highest written offer of settlement submitted by the acquiring agency to the plaintiff at least thirty days prior to trial.

RCW 8.25.075(3).

"RCW 8.25.075 clearly manifests a legislative intent that if a condemnor chooses to take property without instituting condemnation proceedings, the owner shall be reimbursed for his costs of litigation in obtaining his constitutionally guaranteed just compensation." City of Snohomish v. Joslin, 9 Wn. App. 495, 500, 513 P.2d 293 (1973). Thus, RCW 8.25.075(3) protects landowners who might otherwise exhaust their resources in litigating a takings

---

[2] The condemnee may not then bring a subsequent claim for damages already compensated, but may commence a new action should government activity lead to a further decline in the condemnee's property's value. Petersen, 94 Wn.2d at 486.

claim by ensuring they are compensated for their attorney fees and costs and, in this way, vindicating their right to full and fair compensation for their losses.

The requirement that a condemnor pay the condemnee's attorney fees may be avoided by a showing that the government entity made a qualifying good faith settlement offer, as defined in the statute. Once the government entity has shown that it has made such an offer, the condemnee must then show that the offer was insufficient, as defined in the statute. Thus, our first inquiry is whether the government made a qualifying settlement offer, i.e., one that allows for application of the statutorily required comparison. Our second inquiry involves conducting that comparison.

III

"Settlement agreements are governed by contract principles 'subject to judicial interpretation in light of the language used and the circumstances surrounding their making.'" Sherrod v. Kidd, 138 Wn. App. 73, 75, 155 P.3d 976 (2007) (quoting Stottlemyre v. Reed, 35 Wn. App. 169, 171, 665 P.2d 1383 (1983)). Accordingly, a settlement offer must conform to the requirements of any other contract offer and must be analyzed as such.

"'Since only in very exceptional circumstances can informal contracts be created except by a manifestation of assent of the parties to the terms of the promise and to the consideration for it, it is ordinarily necessary for one of the parties to propose to the other the promise which he will make for a certain consideration, or to state the consideration which he will give for a certain promise. That is, a proposal or offer is necessary.'" Wetherbee v. Gary, 62

Wn.2d 123, 127-28, 381 P.2d 237 (1963) (quoting 1 WILLISTON, CONTRACTS § 23 (3d ed. 1957)). In other words, an offer must be sufficient to allow, if accepted, enforcement of promises by both parties set forth therein—it must contain a specific description of the consideration to be given by both parties.

The County's settlement offer did contain a specific description of both parties' consideration—it provided for payment of $552,000 to Kay in exchange for the extinguishment of her inverse condemnation claim and the conveyance of title to the property at issue to the County. We analyze these elements of consideration as part of the County's offer when comparing it to the final judgment.

IV

It is the meaning of the statute as it applies to the County's offer that is at the heart of the parties' dispute. The County urges that the statute is unambiguous and that, per a plain language reading, its settlement offer was sufficient to excuse payment of attorney fees. Kay urges that the statute is ambiguous, and that the intent of the legislature was to require comparison of the value of the settlement offer against the value of the final judgment.

A

The County advocates a plain language reading of the statute. Unambiguous language is given its plain meaning without adding language to the statute. Cerrillo v. Esparza, 158 Wn.2d 194, 201, 142 P.3d 155 (2006). "Courts may not read into a statute matters that are not in it and may not create

legislation under the guise of interpreting a statute." Kilian v. Atkinson, 147 Wn.2d 16, 21, 50 P.3d 638 (2002) (footnote omitted).

The County contends that its offer was sufficient to meet the requirements of RCW 8.25.075(3) because the amount of money awarded by the final judgment was substantially less than its settlement offer—the County offered to pay Kay $552,000 before trial, and Kay was awarded damages of only $96,221.37. The County is wrong.

In arguing as it does, the County misapprehends its own offer. The County did not offer to pay Kay $552,000 in exchange for extinguishment of her cause of action. Rather, the County offered to pay $552,000 to Kay in exchange for the dismissal of her claims against the County and conveyance of fee title to her property to the County. But the final judgment did not award the County title to Kay's property. It only awarded the County extinguishment of Kay's claims upon payment of the amount due.

The plain text of RCW 8.25.075(3) requires that a private landowner be awarded attorney fees in an inverse condemnation action except in the event that the condemnor can show that the final judgment after trial did not exceed, by 10 percent or more, the highest written offer submitted by the condemnor to the condemnee at least 30 days before trial.

When we view the statute according to its plain words, it is clear that the County did not tender a qualifying offer. The final judgment was not comparable to the highest written offer made by the County prior to trial. The final judgment provided Kay $65,000 in inverse condemnation damages, plus prejudgment

interest from the date the damage commenced to the date of judgment—a total of $96,221.37. This judgment allowed Kay to retain title to her property.

The County's offer did not include any payment for damages. Instead, it required Kay to sell her property to the County, thereby extinguishing her condemnation claim. This was an entirely different bargain than that which is embodied in the judgment. Pursuant to the settlement offer, Kay would have received $552,000 in exchange for dismissal of the inverse condemnation claim and transfer of title to her property to the County. Under the final judgment, she may continue to live on and own her property and was granted $96,221.37.

The County's interpretation of RCW 8.25.075(3) is untenable. Its entire focus is on the amount of money it offered to pay—it ignores the consideration it demanded in return. Indeed, the County glosses over the clear difference between an offer that requires the conveyance of title to real property and one that does not. Under the plain language construction of the statute that it urges we adopt, its settlement offer cannot be compared to the final judgment. Thus, it failed to make a qualifying offer.

As stated above, a valid offer requires a clear description of the consideration to be furnished by both parties should it be accepted. Wetherbee, 62 Wn.2d at 127-28. An offer to give a sum of money with nothing expected in return is simply a gratuitous promise and is too indefinite to be enforced. Huberdeau v. Desmarais, 79 Wn.2d 432, 439-40, 486 P.2d 1074 (1971). By contrast, a contract sets forth terms that, if accepted, may be readily enforced. Were the County's written settlement offer to Kay accepted, the County would be

able to seek specific performance to require Kay to convey title, while Kay would be able to seek a monetary remedy if the County failed to tender payment. The final judgment, however, differed materially from the terms of the offer, as it awarded Kay damages without requiring the conveyance of title to the land.

B

For her part, Kay avers that the wording of the statute is ambiguous, and that the intent of the legislature was to require comparison of the value of the settlement offer against the value of the final judgment. To discern this intent, Kay directs us to the statutory scheme within which RCW 8.25.075 exists. "The principle of reading statutes in pari materia applies where statutes relate to the same subject matter." Hallauer v. Spectrum Props., Inc., 143 Wn.2d 126, 146, 18 P.3d 540 (2001). "In ascertaining legislative purpose, statutes which stand in pari materia are to be read together as constituting a unified whole, to the end that a harmonious, total statutory scheme evolves which maintains the integrity of the respective statutes." State v. Wright, 84 Wn.2d 645, 650, 529 P.2d 453 (1974). In conducting our analysis herein, we look to RCW 8.25.075's similarly worded companion statute, RCW 8.25.070. Both statutes cover the award of attorney fees in condemnation actions.

"The purpose of RCW 8.25.070 is to encourage settlement before trial and ensure that each side makes a good faith effort to settle." Olympic Pipe Line Co. v. Thoeny, 124 Wn. App. 381, 399, 101 P.3d 430 (2004).[3] It is a reasonable

---

[3] RCW 8.25.075 was enacted, and RCW 8.25.070 amended, as part of the Relocation Assistance and Real Property Acquisition Policy Act, Laws of 1971, 1st Ex. Sess., ch. 240. This act was passed so that state and local governments could obtain financial aid in acquiring real property by meeting the requirements of the federal Uniform Relocation Assistance and Real

inference that the legislature's intent was to ensure just compensation for property owners in inverse condemnation actions and to encourage good faith settlement offers. Joslin, 9 Wn. App. at 500. Both section .070 and section .075 do this by excusing public entities from paying attorney fees when a final judgment's *value* does not exceed by 10 percent the *value* of the highest written settlement offer.

The value of the final judgment herein is readily ascertainable: Kay was allowed to retain title to her property, which the jury found to have an impaired value of $585,000, and received $65,000 in damages to cover the difference between the impaired value and that which the jury found would be the property's unimpaired value: $650,000. In addition, she was awarded prejudgment interest in the amount of $31,221.37.[4] Adding this to the $585,000 value of the property and the $65,000 she received in damages, the value to Kay of the final judgment on her inverse condemnation claim was $681,221.37.

The value to Kay of the settlement offer was substantially less. Had Kay accepted the settlement offer, she would have received $552,000. But her claims would have been extinguished and she would have had to convey her property to the County. Contrasted with the $681,221.37 value of the final judgment, it is plain that the value of the judgment ($681,221.37) exceeds by well over 10 percent the value of the County's highest written settlement offer ($552,000).

---

Property Acquistion Policies Act of 1970, 42 U.S.C. §§ 4654, 4655, that litigation expenses, including attorney fees, be paid in certain cases.

[4] Prejudgment interest may be awarded to successful inverse condemnation plaintiffs and, when it is, becomes part of the judgment awarded as a result of trial. Sintra, Inc., 131 Wn.2d at 656-57; accord Costich, 152 Wn.2d at 474-75.

The divergence between what would have been required under a settlement as proposed by the County and the final judgment highlights the folly of construing the offer merely as that which the County promised to give while ignoring that which it demanded in return.

Accepting the County's reading of the statute would produce unjust results in future litigation. Any inverse condemnee, bringing a suit to recover the difference between the impaired and unimpaired value of his or her property, would be denied an award of attorney fees so long as the condemnor made an offer to purchase the *entire* property in an amount greater than the damages being sought. This would place condemnees in a position of either accepting an offer to sell their property for less than its fair market value or continuing to litigate the inverse condemnation action without hope of recovering necessary litigation expenses. Such a state of affairs would essentially put an end to the government's risk in such a lawsuit, frustrating the legislature's goal. Courts are not required to read statutes in a manner that would lead to absurd or unjust results. Univ. of Wash. v. City of Seattle, 188 Wn.2d 823, 834, 399 P.3d 519 (2017).

Regardless of whether RCW 8.25.075 is viewed as ambiguous or unambiguous, the County loses. Accordingly, we reverse and remand to the trial court, with instructions to enter an appropriate award of attorney fees to Kay. As Kay prevails in this appeal, we also exercise our discretion to grant her reasonable attorney fees on appeal pursuant to RAP 18.1. Upon compliance with that rule, a commissioner of our court will enter an appropriate order.

Reversed and remanded.

WE CONCUR: