[No. 27065. Department One. March 28, 1938.]

THE STATE OF WASHINGTON, *on the Relation of Bremerton Bridge Company et al., Plaintiff,* v. THE SUPERIOR COURT FOR KITSAP COUNTY, *E. D. Hodge, Judge, Respondent.*[1]

*Hartman, Hartman, Simon & Coles,* for relators.

*The Attorney General, L. C. Brodbeck* and *John E. Belcher, Assistants,* for respondent.

[1]Reported in 77 P. (2d) 800.

MAIN, J.—This is a proceeding in eminent domain. The state of Washington filed a petition in the superior court of Kitsap county to condemn the Bremerton toll bridge across Sinclair's Inlet between Bremerton and East Bremerton, in that county. A hearing was had upon the petition, and an order of public use and necessity entered. To review this order, the case is here by reason of a writ of certiorari having been issued.

There was a former proceeding (*State ex rel. Bremerton Bridge Co. v. Superior Court, ante* p. 7, 76 P. (2d) 990), brought for the same purpose, and when the order of public use and necessity in that case was reviewed by this court, it was held that the petition was good as against a demurrer, but that the state had failed in its proof, due to the fact that it had not offered any evidence of a *bona fide* attempt to settle with the owners of the property before the filing of the petition to condemn. In that case, the order of public use and necessity was reversed, without prejudice to the bringing of another action for the same purpose. In response to this, another action was brought, and this is the one that is now before us for review.

The relator, Bremerton Bridge Company, makes two principal contentions, (a) that the state failed to comply with the requirements of Laws of 1935, chapter 148, p. 473, which provides for a joint detailed survey and appraisement of the property by the department of highways and the department of public works (now public service), and (b) that the state did not make a *bona fide* effort to agree with the owners of the property prior to the institution of this proceeding.

It may well be doubted whether the question of the joint detailed survey and appraisement is now open to the relator, in view of the fact that the petition in

this case is exactly the same as in the former case, and that petition was held defective only in the one particular mentioned.

Without passing upon the question of whether the petition alleges a joint survey and appraisement, we shall pass to the question of whether the relator has the right to raise this question.

Laws of 1935, chapter 148, p. 473, provides:

"That the Washington state highway department and the department of public works is hereby instructed to make a detailed survey and appraisement of the toll bridge from Bremerton to East Bremerton, now owned by the Bremerton Bridge Company, a corporation, for the purpose of ascertaining the true valuation of the said toll bridge for the people of the State of Washington; . . ."

It will be admitted that this is a mandatory direction to the two state departments mentioned, and that there has not been any sufficient compliance with the statute, though it is true that, sometime prior to January 26, 1937, a survey was made by the highway department. It will be noted that the statute quoted provides that the highway department and the departmentment of public works are instructed to make a detailed survey and appraisement of the bridge in question "for the purpose of ascertaining the true valuation of the said toll bridge for the people of the State of Washington." It thus appears that the purpose of the survey and appraisement was for the benefit of the people of the state, so that, in purchasing the bridge, there would not be paid for it more than its true value. This statute, obviously, was not passed for the benefit of the owner of the bridge.

It is a generally recognized rule that the owner of property may testify to its value without qualifying as an expert when the value of the property is in issue. It could hardly be said that the survey and appraise-

ment provided for in the statute were necessary to inform the bridge company of the value of its property. While the statute is mandatory, it is our opinion that the bridge company is not in a position to raise the question of a lack of compliance therewith.

█ Upon the question of the proof of an attempt to agree with the owners of the property prior to the institution of the proceeding, the evidence is in the form of correspondence. Laws of 1937, chapter 135, p. 502, appropriated out of the motor vehicle fund of the state, for the purchase of the toll bridge in question, by the director of highways under the authority contained in Laws of 1935, chapter 148, p. 473,

". . . the sum of three hundred twenty-five thousand dollars ($325,000.00), or so much thereof as may be necessary: *Provided,* That if consummation of purchase by agreement, or judgment fixing value under condemnation proceedings, have not been completed prior thereto, this appropriation shall revert to the motor vehicle fund on April 30, 1938."

December 3, 1937, the attorney general, at the direction of the director of highways, wrote the bridge company to the effect that the state would purchase the bridge for the sum of $302,763.76. This letter contained a request for an acceptance or rejection within five days of the receipt of the communication. December 7th, the bridge company acknowledged receipt of the letter and requested further time to consider the matter, due to the fact that it would be necessary to call a stockholders' meeting for the purpose of passing upon the matter. This extension of time was granted, and a stockholders' meeting was called.

Before the meeting was held, however, the attorney general became aware that his letter of December 3rd was being interpreted as an offer on behalf of the state for the equity of the bridge company, and not for the

title, free and clear of any encumbrances. December 21, 1937, a supplemental letter was written in which it was stated that the offer was for the title to the property, free and clear of all encumbrances. The bridge company, being of the view that this was a modification of the previous offer, called a second stockholders' meeting for the purpose of considering the matter, and the first stockholders' meeting was abandoned. The matter came before the stockholders, and the meeting adjourned without taking any action upon the offer, for the reason, as appears in the letter of the bridge company to the attorney general under date of January 10, 1938, that there had not been a detailed survey and appraisement by the two departments of the government mentioned.

It is the position of the bridge company that the offer was not *bona fide*, because it was made prior to the detailed survey and appraisement, as required by the Laws of 1935. Inasmuch as we have already found that the bridge company is not in a position to raise the question of the survey and appraisement, and inasmuch as it was not made for its benefit, its action, in effect, in refusing to pass upon the offer without such survey and appraisement, was equivalent to the rejection of the offer. This being true, there was no reason, and it would have been useless, for the state to have attempted to carry on further negotiations looking to an agreement with reference to the value of the bridge. On this phase of the case, we conclude that the evidence was sufficient to show that the state, through its officers, was proceeding in good faith.

The order here for review will be affirmed. Due to the shortness of the time in which to complete the proceeding in the superior court before the appropriation will revert to the motor vehicle fund, the remittitur, upon the filing of this opinion, will immediately

be transmitted to the clerk of the superior court of Kitsap county.

STEINERT, C. J., HOLCOMB, GERAGHTY, and SIMPSON, JJ., concur.