[No. 35973.    Department One.    August 30, 1962.]

PAT CUNNINGHAM *et al., Respondents,* v. THE TOWN OF TIETON, *Appellant.**

*Reported in 374 P. (2d) 375.

*Velikanje & Moore,* for appellant.

*Gavin, Robinson & Kendrick* and *Robert R. Redman,* for respondents.

FOSTER, J.—This is a reverse eminent domain proceeding in which the respondent resident property owners recovered for unconstitutional damage to their properties adjacent to a sewage lagoon constructed and maintained by the town of Tieton in Yakima County.

The first five assignments of error challenge the sufficiency of the evidence while the remaining seven relate to instructions given or refused. We find no error and affirm.

The appellant constructed the lagoon above the wells which constituted the sole domestic water supply of the respondents. All of the sewage from the town, aggregating 80,000 gallons per day, is deposited in the lagoon. Some of the sewage evaporates, but the balance percolates the water table and contaminates respondents' domestic water supply.

No useful purpose would be served by a detailed narrative of the evidence. There was proof of sewage odors penetrating the homes of two of the respondents. Some witnesses for the appellant testified that they had been in that vicinity but had not noticed such odors.

It is beyond controversy that the town daily discharged 80,000 gallons of sewage effluent into the lagoon. The proof was ample that the water table was raised after the appellant's sewage facility was placed into operation.

There was proof that the well of each respondent had been polluted and contaminated by the sewage effluent from the appellant's disposal system. Since the contamination, respondents, in consequence, have transported water for domestic use. Respondents' proof showed that the domestic water supply had been tested prior to the installation of the appellant's sewage facility and that all such tests were favorable. Since then, however, all of the respondents had received reports of adverse tests which frequently disclosed the presence of coliform bacteria. Such organisms live in the human intestine. There was substantial proof that the sewage effluent carried virus which is harmful to the health of human beings. There was ample proof from which the jury could conclude, and apparently did conclude, that the domestic water supply of each respondent had been rendered unfit for human consumption by the operation of the appellant's sewage disposal system.

Appellant's defense was that the sewage effluent, percolating in the underground waters, had been rendered harmless by scientific treatment. Both sides presented the testimony of experts respecting tests which they had performed to ascertain if the sewage effluent found its way into the respondents' wells. That testimony is in irreconcilable conflict, but that determination was the function of the jury and not this court.

Each of the respondents testified to the fair market value of his property both before and after the construction and operation of the lagoon. The verdicts for the respondents were from $1,500 to $5,000, and each award was well within the range of the evidence.

Appellant's counsel rigorously cross-examined each respondent respecting the value of his property. Anything elicited on the cross-examination affected the weight to be given to such testimony, but that determination was exclusively for the province of the jury.

■ The decisional law leaves no room for doubt that the owner may testify as to the value of his property because he is familiar enough with it to know its worth. *State ex rel. Bremerton Bridge Co. v. Superior Court,* 194 Wash.

196, 77 P. (2d) 800; *Weber v. West Seattle Land & Imp. Co.,* 188 Wash. 512, 63 P. (2d) 418; *Wicklund v. Allraum,* 122 Wash. 546, 211 Pac. 760.[1]

█ The proofs of the fugitive sewage contaminating the water supply of each respondent hardly leave room for argument respecting the certainty of damage. The fact of damage being established, the appellant cannot be immunized because of uncertainty anent the amount. This was recently examined in some detail in *Wenzler & Ward Plumbing & Heating Co. v. Sellen,* 53 Wn. (2d) 96, 330 P. (2d) 1068.[2] Uncertainty as to whether there has been damage may be fatal, but we are not confronted with that situation. It is scarcely open to argument that the purchase price of the property would be affected by the fact that the only domestic water supply was contaminated with sewage.

All of the assignments of error respecting the insufficiency of the evidence to sustain the verdict are, therefore, without merit.

We now turn to the claimed errors respecting the instructions.

█ In the very first instruction, the jury was told that it could not single out any one instruction for undue emphasis but must consider them as a whole. If this were not so, it would be impossible to give separate instructions. Each instruction must be considered in the light of every other instruction. *Pement v. F. W. Woolworth Co.,* 53 Wn. (2d) 768, 337 P. (2d) 30; *Lozan v. F.O.E., Aerie No. 3,* 53 Wn. (2d) 547, 335 P. (2d) 4; *Cote v. Allen,* 50 Wn. (2d) 584, 313 P. (2d) 693.

█ Appellant assigns error on the refusal of the trial court to submit special interrogatories to be answered by the jury in addition to a general verdict. Both *Brown v. Intercoastal Fisheries,* 34 Wn. (2d) 48, 207 P. (2d) 1205,

---

[1] In diversity cases, the United States courts being bound by state law have so applied the law. *Puget Sound Power & Light Co. v. Public Util. Dist. No. 1,* 123 F. (2d) 286, cert. den., 315 U. S. 814, 86 L. Ed. 1212, 62 S. Ct. 798.

[2] See *Walla Walla Port Dist. v. Palmberg,* 280 F. (2d) 237, federal courts bound by state law in diversity cases.

and *Salo v. Nelson*, 22 Wn. (2d) 525, 156 P. (2d) 664,[3] decided that submitting special interrogatories or declining to do so was entirely within the discretion of the trial court and would not be reviewed on appeal. We find no abuse of discretion and none is suggested.

Appellant assigns error to an instruction which defines "nuisance" in the statutory language (RCW 7.48.010).

■ The substance of the argument[4] is that damaging by nuisance is something other and in addition to the constitutional prohibition against damaging private property. But this is not so. The proofs show an unconstitutional damaging by nuisance. The court properly instructed the jury respecting the measure of damage. The assignment was completely disposed of adversely to the appellant's claim in *Southworth v. Seattle*, 145 Wash. 138, 140, 259 Pac. 26, in which we said:

"The one exception, above referred to, relates to a statutory definition of a nuisance, and the argument is that thereby the case was given to the jury on a double theory, the one of nuisance and the other on the constitution. We do not so understand the situation. Only one cause of action was stated in the complaint. The very first statement made by the court in instructing the jury was that this is not a suit for the recovery of damages by reason of wrongful or negligent acts on the part of the defendant; and still further on the jury was plainly told that any verdict for the plaintiffs must be on account of the depreciation in the market value of the property and that

" ' . . . the depreciation and value is the difference between the fair market value of the plaintiffs' property immediately before the construction and operation of the

---

[3]See Driver, The Special Verdict—Theory and Practice, 26 Wash. L. Rev. 21 (1951); Driver, A Consideration of the More Extended Use of the Special Verdict, 25 Wash. L. Rev. 43 (1950).

[4]Serious doubt is entertained as to whether the appellant is estopped to advance its claim of error because, in its requested instruction No. 42, it asked the court to advise the jury as follows:

" . . . If you should find by a fair preponderance of the evidence that any plaintiff's use and enjoyment of his land has been unreasonably interfered with by reason of such odors, if any, or such pollution, if any, then you may determine that said lagoon constitutes a nuisance as to such plaintiff. . . . "

sewage disposal plant here involved and the fair cash market value of the property at the time of this trial.'

"The instruction complained of, to say the least, could in no way harm the city, but of course what was meant and said was that, in determining the question of whether or not respondents' property had been damaged within the purview of the constitutional provision, they could take into consideration those things clearly defined by the statute which, under all authorities, constitute damage. . . ."

An additional objection is made that the instruction did not require the respondents to prove the nuisance by a "preponderance of the evidence." But this was adequately dealt with elsewhere.[5]

■ The appellant assigns error to the instruction set out in the margin.[6] Two of the objections urged in the brief were not in the exceptions and cannot be considered. *Ralston v. Vessey*, 43 Wn. (2d) 76, 260 P. (2d) 324.

The argument is made that the instruction failed to limit the jury's consideration to odors or contamination reaching the plaintiffs' properties. The simple answer is that the instruction was not applicable at all unless and until the jury found that the property of any of the plaintiffs had

[5]"You are instructed that in order for plaintiffs to recover damages in this case, based upon their claim that the defendant created a nuisance, they must establish by a fair preponderance of the evidence some wrongful act or acts, or wrongful omissions to act on the part of the defendant. . . ." Instruction No. 13.

[6]"The measure of damages, if any, to real estate is the difference between the value of said real estate prior to the construction of the defendant's lagoon, and the value of the said real estate following the construction of the lagoon, and in this consideration you may consider such offensive odors, contamination or pollution of plaintiffs' wells as emanate from the lagoon, if you find by a preponderance of the evidence that the same has taken place, and in addition thereto you may consider such depreciation of said property value, if any, as may have been proximately caused by reasonable fears of such pollution or contamination if any such fears you find would exist in prospective purchasers of the property fully informed. In this connection the question to be determined by you is not whether the fear is founded in science, but whether it exists, not whether it is imaginary, but whether it is real, in that it affects the movements and conduct of men when it is shared by the public to such an extent that property values are diminished." Instruction No. 6.

been damaged by the offensive odors or contamination reaching their properties. The jury was advised in other instructions that it would have to find by a fair preponderance of the evidence that the offensive odors or pollution invaded the plaintiffs' properties before a verdict for the plaintiffs could be returned.

The second point of the argument is that there is a difference in the meaning of "contamination" and "pollution" and that it was error to use both. The record discloses that many witnesses used the words interchangeably, and the instruction must be so understood. It was so considered in the trial.

■ The principal argument is that there was no evidence from which it could be said that the minds of purchasers would be affected by fear of offensive odors or contamination or pollution of the well in the minds of a prospective purchaser. Evidence on this question is unnecessary because the matter dealt with was a hypothetical purchaser who was both willing and informed. Factors affecting the market value of real estate in a hypothetical market involve what would happen in the event of a specified contingency, not what has actually occurred.[7]

For present purposes, we must assume that a fully informed purchaser would have a true picture of the condition disclosed by this evidence. The trial court sagaciously summarized the entire matter in these words:

". . . it is a matter of common knowledge, which the jury may know, that farm homes with offensive odors and/or contaminated or polluted water will be depreciated in value."

The substance of the instruction was taken from *Ferry v. Seattle,* 116 Wash. 648, 200 Pac. 336, 203 Pac. 40, in which we approved the following excerpt from *Everett v. Paschall,* 61 Wash. 47, 111 Pac. 879:

" 'The question is, not whether the fear is founded in science, but whether it exists; not whether it is imaginary,

---

[7]The owners are under a duty to disclose this concealed defect to all prospective purchasers. *Obde v. Schlemeyer,* 56 Wn. (2d) 449, 353 P. (2d) 672.

but whether it is real, in that it affects the movements and conduct of men. Such fears are actual, and must be recognized by the courts as other emotions of the human mind. . . . Comfortable enjoyment means mental quiet as well as physical comfort. . . . Nuisance is a question of degree, depending upon varying circumstances. There must be more than a tendency to injury; there must be something appreciable. The cases generally say tangible, actual, measurable, or subsisting. But in all cases, in determining whether the injury charged comes within these general terms, resort should be had to sound common sense. . . . The theories and dogmas of scientific men, though provable by scientific reference, cannot be held to be controlling unless shared by the people generally. . . . The only case we find holding that fear alone will not support a decree in this class of cases is Anonymous, 3 Atk. 750. . . . Our statute modifies, if indeed it was not designed to change this rule. Under the facts, we cannot say that the dread which is the disquieting element upon which plaintiffs' complaint is made to rest, is unreal, imaginary or fanciful.' "

The instruction correctly stated the applicable rule of law.

Appellant argues that the jury was misled by an instruction using the phrase "guilty of maintaining a nuisance" into thinking that the action was criminal rather than civil. Considering the instructions as a whole, this is inconceivable.

Appellant claims it is entitled to a new trial because of the refusal to give its requested instruction that appellant had a right to construct and operate the sewage lagoon without incurring liability as long as it did not unreasonably interfere with the use and enjoyment by the respondents of their properties. The exception taken was that

" . . . the same relates to the question of unreasonable interference in the creation of a nuisance and that the entire instruction is necessary for a proper statement to the jury of the law with reference thereto."

The necessity of unreasonable interference was adequately dealt with in other instructions. The jury was told that appellant had the right to construct and operate the sewage lagoon and that it would not be a nuisance "so long as the rights of the plaintiffs are not unreasonably invaded." The jury was told that, unless it found by a fair preponder-

ance of the evidence that the use and enjoyment of the respondents' properties had been unreasonably invaded, they were not entitled to recover. The exceptions to the requested instruction are extremely vague, but any matter complained of is covered by other instructions.

Appellant complains of the refusal to give a requested instruction that the jury was not entitled to consider any peculiar, unusual, or sentimental values attached by an owner to his property, nor the replacement cost of any improvements. It is claimed that, with respect to the respondent Cunningham, there was evidence of such elements of damage in the proofs, but the appellant has not attempted to point out any such evidence and we are not required to search the record therefor. The respondents contend there is no such evidence.

Appellant assigns error on the refusal to give its requested instruction that, for an unconstitutional damaging of the land, the plaintiff is not entitled to recover except on proof of direct damage. The matter was adequately covered in an instruction[8] that, before the plaintiffs could

[8]"You are instructed that one of the grounds upon which plaintiffs seek to recover of the defendant is the allegation that the defendant, in maintaining and operating the sewage lagoon has damaged plaintiffs' property without compensating plaintiffs therefor under Article I, Section 16, of the Washington State Constitution.

"In order for a property owner to recover for a claimed damaging without compensation under such constitutional provision, by reason of the construction or operation of a public works, it is essential that (1) there be a direct invasion of his property or property rights; (2) that this invasion be a proximate result of the construction and operation of the public works; (3) that permanent damage results to his property; and (4) that such damage is neither remote, indirect or conjectural but exists with reasonable certainty.

"So in this case, before the plaintiffs are entitled to your verdict as a result of the alleged damage, if any, under the Washington Constitution, you must find by a fair preponderance of the evidence the existence of all of the following:

"(1) the construction and operation of the lagoon has resulted in a direct invasion of plaintiffs' property or property rights; and

"(2) such invasion, if any, is a proximate result of the construction and operation of the lagoon; and

recover, the jury must find by a fair preponderance of the evidence (1) direct invasion of plaintiffs' properties or property rights; (2) such invasion must be a proximate result of the construction and operation of the lagoon; (3) permanent damage as a result of the invasion; and (4) reasonable certainty of the damage.

We find no error.

Affirmed.

FINLEY, C. J., HILL, WEAVER, and ROSELLINI, JJ., concur.

---

November 15, 1962. Petition for rehearing denied.

*Reported in 374 P. (2d) 370.

---

"(3) that plaintiffs' property has been permanently damaged as a result of such invasion; and

"(4) that such damage is neither remote, indirect nor conjectural, but exists with reasonable certainty." Instruction No. 20.