[No. 60397-9.   En Banc.   July 13, 1995.]

PORT OF SEATTLE, *Respondent*, v. EQUITABLE CAPITAL GROUP, INC., *Appellants*.

*Steel, Rives, Boley, Jones & Grey,* by *Stephen O. Kenyon* and *Deborah Elvins,* for appellant.

*Tousley & Brain,* by *Deborah Knapp, Kim Stephens, Stephen Fjelsted* and *William Block,* for respondent.

SMITH, J. — Appellant Equitable Capital Group, Inc., seeks direct review of a King County Superior Court judgment based upon a jury verdict which determined the fair market value of Appellant's property acquired by the Port of Seattle to be $12 million under an agreement between the parties to decide the value in an eminent domain proceeding. We granted review. We affirm.

QUESTIONS PRESENTED

This case presents four principal questions: (1) whether the trial court erred in excluding the testimony of Dr. William E. Whitelaw and Thomas Danzler, expert witnesses for Equitable, concerning their opinions on the fair market value of the property; (2) whether the trial court abused its discretion in denying Equitable's motion for continuance; (3) whether the trial court erred in setting March 13, 1992, the date the Port of Seattle obtained legal

title to the property, as the date of valuation, instead of the date of trial, February 17, 1993; and (4) whether the trial court erred in refusing to bilaterally apply the attorney fees clause of the purchase and sale agreement.

## Statement of Facts

Appellant Equitable Capital Group, Inc. is a Washington corporation serving as managing general partner of Equitable Capital Group, Ltd. I Limited Partnership, a Washington limited partnership.

On March 3, 1992, Respondent Port of Seattle (Port) and Appellant Equitable Capital Group, Inc. (Equitable) entered into a purchase and sale agreement.[1] Under its terms, Equitable agreed to sell to the Port of Seattle all of its interest in certain real property situated in the city of SeaTac, King County, Washington. The property consisted of three parcels: parcel one was 9.067 acres,[2] parcel two was 20.51 acres,[3] and parcel three was less than one acre. The purchase and sale agreement provided that the Port would "acquire this property at fair market value"[4] and also provided:

> The parties each agree to obtain an appraisal for the Parcels from an MAI accredited appraiser and to exchange appraisal information concurrent with execution of this Agreement. Following exchange of appraisals, the parties shall negotiate in good faith to reach a mutually acceptable determination of fair market value for the Parcels.[5]

In the event the parties were unable to reach agreement on the fair market value of the property, under the purchase and sale agreement they were to "arrange for a binding arbitration proceeding upon mutually acceptable

---

[1]Clerk's Papers, at 507.

[2]Report of Proceedings (February 19, 1993), at 534.

[3]Report of Proceedings (February 19, 1993), at 535-36.

[4]Clerk's Papers, at 507.

[5]Clerk's Papers, at 507.

terms and conditions".[6] And "[i]n the event the parties [we]re unable to agree upon the terms and conditions of *arbitration* on or before April 16, 1992",[7] the Port was "to promptly institute eminent domain proceedings".[8]

The agreement provided that the Port would pay one-half the amount of its appraised fair market value, as determined by the Port's appraiser, on or before March 6, 1992, the date specified as the closing date.[9] In the event the parties reached agreement on the fair market value on or before April 2, 1992, the contract required the Port to pay the balance of the purchase price in two equal installments, the first on June 1, 1992, and the second on September 1, 1992.[10] The Port had the "option of prepaying either or both installments or any portion thereof at any prior time without penalty".[11]

In the event it became necessary for the Port to initiate a condemnation action, the Port was still required by the agreement to pay its appraisal value on the June and September dates. After entry of judgment in the condemnation proceeding, the Port would then be required to pay any difference between the judgment award and the amounts it had already paid.[12]

Under terms of the purchase and sale agreement, the Port of Seattle agreed to pay Equitable the amount of the highest of its three appraisals, $12,075,000.[13] The Port

---

[6]Clerk's Papers, at 508.

[7]Clerk's Papers, at 508. (Emphasis added).

[8]Clerk's Papers, at 508.

[9]Clerk's Papers, at 508.

[10]Clerk's Papers, at 508.

[11]Clerk's Papers, at 509.

[12]Clerk's Papers, at 509.

[13]The Port's appraisals on the property were $8,275,000, $10,680,000 and $12,075,000. Clerk's Papers, at 160, 2070.

paid that sum in two installments, the first on March 13, 1992 and the second on June 1, 1992.[14]

On March 13, 1992, the Port acquired legal title to the three parcels, which were removed from the tax rolls for property tax purposes.[15] The Port assumed all financial risks and burdens of ownership for them.[16]

The Port and Equitable could not agree on fair market value for the parcels nor on the terms of arbitration. On April 21, 1992, under the purchase and sale agreement, the Port initiated condemnation proceedings against Equitable in the King County Superior Court.[17]

On August 26, 1992, this matter was initially assigned to the Honorable Donald D. Haley, King County Superior Court, but reassigned to the Honorable Mary Wicks Brucker.[18] The case was later reassigned to the Honorable Ann Schindler, who, on January 3, 1993 denied the Port's motion to exclude testimony of Equitable's experts, but entered an order requiring Equitable to file supplemental answers to expert witness interrogatories by January 11, 1993. The trial court later granted motions in limine excluding testimony of two of Equitable's three expert witnesses offering opinions on fair market value, and excluding a portion of the testimony of the third witness for foundation reasons.

On January 29, 1993, Judge Schindler denied Respondent Port's motion for reconsideration under former KING COUNTY LOCAL RULE 7(b)(2)(h).[19] On March 2, 1993, the court denied Equitable's motion for reconsideration of the ruling to exclude the testimony of its expert witness, Dr. William E. Whitelaw, relating to his application of the

---

[14]Clerk's Papers, at 2071.

[15]This was done because of property tax liability for the parcels incurred by the previous owner, Winmar Corporation. See Clerk's Papers, at 2071.

[16]Clerk's Papers, at 2071.

[17]Clerk's Papers, at 1842.

[18]Clerk's Papers, at 39.

[19]Clerk's Papers, at 1852-53.

"Peiser Model" in reaching an opinion on fair market value. The trial then proceeded[20]

On March 5, 1993, the 12-person jury was faced only with determining the fair market value of the approximately 31 acres of land which was the subject of the eminent domain proceeding.[21] The jury returned its verdict determining the fair market value of the property to be $12 million. On April 23, 1993, Judge Schindler signed a judgment and order providing:[22]

> 1. The jury's determination of the fair market value of the subject property was $12,000,000;
>
> 2. The Port of Seattle is entitled to a judgment in the amount of $20,025 for (1) the Port's reasonable attorneys' fees, experts' fees and costs incurred in connection with responding to Allen Safer's (Equitable's expert) revised opinion of value pursuant to the Court's Order Excluding Speculative Evidence of Proposed Uses and Market Value ($19,790); and (2) statutory taxable costs and attorney fees ($235);
>
> 3. Pursuant to the Purchase and Sale Agreement the property legally described on Exhibit 1 (the "Property") was transferred to the Port of Seattle by Respondent subject to a deed of trust in favor of Respondent. All right, title and interest in the property is hereby fully vested in the Port of Seattle free and clear of all claims of title, liens, deeds of trusts, or other interests of Respondent, Equitable Capital Group, Inc., a Washington corporation, as managing general partner of Equitable Capital Group, Ltd. I Limited Partnership, a Washington limited partnership, and of all other persons and entities claiming any interest in the Property.

Appellant Equitable now seeks review of the trial court's decision based upon that jury verdict. On July 27, 1994, this court denied Respondent Port of Seattle's motion to dismiss and retained the matter for direct review under RAP 4.2.

---

[20]Clerk's Papers, at 4016-17.

[21]Clerk's Papers, at 4284.

[22]Clerk's Papers, at 4284-85.

## DISCUSSION

## Exclusion of Expert Testimony

We address exclusion of Appellant's expert testimony, particularly the testimony of Dr. William E. Whitelaw.[23]

The trial court noted that, even assuming reliability of the analytic method used by Dr. Whitelaw to appraise the fair market value of vacant commercial property in a metropolitan area, his supplemental answers filed by Equitable just seven days before trial had been revised and significantly changed by him from earlier answers to interrogatories. The court observed that, despite a January 8, 1993 order requiring all experts to clearly state their opinions based upon the facts provided by January11, 1993, Dr. Whitelaw "significantly changed the database to include new categories of properties and new properties, changing the comparables from 88 to 237, based, primarily, on the database that he's been using all along. The factors in the coefficients in this model have changed significantly, as has its value".[24] The court granted the Port's motion to exclude the expert testimony of Dr. Whitelaw.

In excluding the testimony, the trial court noted that Appellant's expert obtained two widely disparate conclusions on fair market value. Prior to the deadline of January 11, 1993, the expert determined a fair market value of $4.3 million based upon 88 comparables. After the deadline, the expert determined a fair market value of $65 to $70 million based upon 237 comparables.

By not complying with the pretrial order of January 8, 1993 and the complete change of his database with expansion of his comparables from 88 to 237 after Janu-

---

[23]Dr. William E. Whitelaw holds a Ph.D. degree in economics from the Massachusetts Institute of Technology. He is presently a professor in the Department of Economics at the University of Oregon, and is President of ECO Northwest. He has served on many technical advisory boards and is presently on the Board of Economists and the Oregon Progress Board. He has published many articles and columns in professional publications. Clerk's Papers, at 1872.

[24]Report of Proceedings vol. 10 (February 16, 1993), at 2285-86.

ary 11, 1993, Dr. Whitelaw effectively deprived the Port of the opportunity to investigate his comparables. The trial court properly rejected his testimony which would have resulted in prejudice to the Port.

Equitable also argues that the trial court erred in excluding the expert testimony of Thomas Dantzler,[25] who would have testified concerning the fair market value[26] of the property.[27] Mr. Danzler's determination of fair market value ostensibly was based upon his ownership interest in the property,[28] his extensive knowledge about property values and their determinants in the vicinity of the Seattle-Tacoma International Airport, and his knowledge of the prices of property bought and sold in the vicinity.[29]

The trial court excluded Mr. Dantzler's testimony concerning the fair market value of the property because he did not identify the theory, technique or method he used in formulating his opinion of the value per foot of the property.[30] The court observed that he "c[a]me up with a value per foot[ ] and . . . multiplie[d] that times what he believe[d] to be the potential buildable square feet".[31] The court further observed that Mr. Dantzler had "done no sort of discounted cash flow or income valuation analysis" and concluded there was "no basis [for the court] to know

---

[25]Clerk's Papers, at 407.

[26]The "fair market value" is "the amount of money which a well informed purchaser, willing but not obliged to buy the property would pay, and which a well informed seller, willing but not obliged to sell it would accept, taking into consideration all uses to which the property is adapted and might in reason be applied". *State v. Wilson*, 6 Wn. App. 443, 447, 493 P.2d 1252 (1972) (citing *Donaldson v. Greenwood*, 40 Wn.2d 238, 242 P.2d 1038 (1952)).

[27]Clerk's Papers, at 2989.

[28]Thomas Dantzler was the president of Equitable Capital Group, Inc. See Clerk's Papers, at 2989.

[29]Clerk's Papers, at 2990.

[30]Report of Proceedings (February 18, 1993), at 314.

[31]Report of Proceedings (February 18, 1993), at 314.

how he came up with his per foot value".[32] The trial court excluded his testimony.

██ In this state "[t]he decisional law leaves no room for doubt that the owner may testify as to the value of his property because he is familiar enough with it to know its worth".[33] The Court of Appeals, Division Two, noted:

> The rationale behind this right is that one who has owned property is presumed to be sufficiently acquainted with its value and the value of surrounding lands to give an intelligent estimate of the value of his property. *Because of this rationale no inquiry into knowledge is required to qualify the owner, although knowledge will affect the weight to be accorded his opinion. . . .* In giving his opinion the owner is entitled to explain his valuation by relevant and competent methods of ascertaining value.[34]

Although landowners have the right to testify concerning the fair market value of their property, this right is not absolute.[35]

In *State v. Larson*,[36] the State instituted condemnation proceedings against the defendant for a gravel pit site. During the proceeding, the trial court excluded the owner's opinion on fair market value.[37] This court affirmed the trial court because "in the absence of proof of a market demand and other variable factors which affect yardage values, 'it is improper to arrive at a conclusion concerning the value of property which has a mineral

---

[32]Report of Proceedings (February 18, 1993), at 314.

[33]*Cunningham v. Tieton*, 60 Wn.2d 434, 436, 374 P.2d 375 (1962) (citing *State ex rel. Bremerton Bridge Co. v. Superior Court*, 194 Wash. 196, 77 P.2d 800 (1938); *Weber v. West Seattle Land & Improvement Co.*, 188 Wash. 512, 63 P.2d 418 (1936); *Wicklund v. Allraum*, 122 Wash. 546, 211 P. 760 (1922).

[34](Italics ours.) *State v. Wilson*, 6 Wn. App. 443, 451, 493 P.2d 1252 (1972).

[35]*See State v. Larson*, 54 Wn.2d 86, 338 P.2d 135 (1959).

[36]54 Wn.2d 86, 338 P.2d 135 (1959).

[37]*Larson*, at 87.

content by multiplying the assumed number of cubic yards of material available times a given price per unit.' "[38]

■ In *Larson*, this court recognized that an owner may testify concerning the fair market value of the owner's property without qualifying as an expert, but that testimony may be properly excluded if "the owner has not used his intimate experience with and knowledge of the land's uses as a basis for determining its fair market value, but has obviously determined it upon the application of an improper formula . . .".[39]

This case is similar to *State v. Rowley*.[40] In *Rowley*, the trial court granted a motion to strike the testimony of appellant landowner on fair market value. This court held that the owner's testimony was properly excluded under *Larson* because the appellant landowner "used an improper method in determining the fair market value of certain portions of his property".[41] That is,

[h]e testified that those particular parcels contained a certain amount of gravel or riprap and that such gravel and riprap was worth 10 cents per cubic yard in place. He then said that the value of those parcels represented the result of those two figures when multiplied. (Quantity times price per unit equals value.)

That testimony of value was clearly in violation of the principle enunciated by this court in *State v. Larson*, 54 Wn.2d 86, 88-89, 338 P.2d 135 (1959).[[42]]

In *Rowley*, we held that the appellant did not provide evidence supporting the assertion "that a prospective purchaser would be willing to pay 10 cents per cubic yard for all his gravel and riprap at the time of the condemna-

---

[38]Larson, at 88 (citing *State v. Mottman Mercantile Co.*, 51 Wn.2d 722, 321 P.2d 912 (1958)).

[39]*Larson*, at 88.

[40]74 Wn.2d 328, 330, 444 P.2d 695 (1968).

[41]*Rowley*, at 330.

[42]*Rowley*, at 330-31.

tion action".[43] It was also emphasized that the trial court "did not strike all of [appellant's] testimony".[44] The trial court in *Rowley* only excluded that testimony relating to the value of property.[45] Thus, it was "apparent that the stricken testimony related only to the numerical value of the property because that value was based on a faulty premise".[46]

Similarly, in this case Mr. Dantzler did not provide any supportive evidence that a prospective purchaser would be willing to pay $12 per square foot for the property at the time of the condemnation action. His opinion of fair market value was reached by projecting millions of square feet of building space upon the speculation of building numerous high rise office towers and multiplying that number by $12. He provided no method, reasoning or explanation for the $12 figure which resulted in a fair market value of $33.6 million. The trial court did not err in excluding that portion of his offered testimony.

### Motion for Continuance by Equitable

■ ■ Equitable argues that the trial court abused its discretion in denying its motion for continuance. A court's denial of a motion for continuance is reviewed for abuse of discretion only. In *State ex rel. Carroll v. Junker*,[47] this court stated:

> Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion, that is, *discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.*

(Italics ours.)

---

[43]*Rowley*, at 331-32.

[44]*Rowley*, at 332.

[45]*Rowley*, at 332.

[46]*Rowley*, at 332.

[47]79 Wn.2d 12, 26, 482 P.2d 775 (1971).

■ Equitable supports its contention that the court's denial of its motion for continuance constitutes an abuse of discretion by asserting that "there was no principled reason for it"[48] and that "nothing counseled rigid adherence to the trial date". Under an abuse of discretion standard, the burden rests on the appellant to establish that the denial was manifestly unreasonable. Appellant Equitable has not met that burden.

In this case, Respondent correctly notes it was the trial court's considered judgment that Equitable's request for a continuance was unjustified. The trial court observed "that all of the reasons that Equitable has stated are grounds that Equitable could have and should have anticipated".[49] The trial court also observed that Equitable's motion for a continuance appeared to be "a request for the Court to allow Equitable more time to basically do its work and preparation . . .".[50]

The trial court's denial of Equitable's motion for continuance did not constitute an abuse of discretion.

### Determination of the Valuation Date

■ Equitable claims the trial court erred in determining the date of valuation to be March 13, 1992, the date title to the property was transferred to the Port. It argues that the correct date of valuation should have been the date of trial, February 17, 1993. Equitable relies upon *Brazil v. Auburn*,[51] an inverse condemnation case,[52] which states that the general rule in Washington is that the

---

[48]See Br. of Appellant, at 76.

[49]Report of Proceedings vol. 2 (February 12, 1993), at 241.

[50]Report of Proceedings supp. vol. 10 (February 16, 1993), at 2377.

[51]93 Wn.2d 484, 610 P.2d 909 (1980).

[52]The court in *Brazil* notes "Inverse condemnation has been defined as 'the popular description of an action brought against a governmental entity having the power of eminent domain to recover the value of property which has been appropriated in fact, but with no formal exercise of the power' ". *Brazil v. Auburn*, supra at 490 (quoting *Highline Sch. Dist. 401 v. Port of Seattle*, 87 Wn.2d 6, 8 n.1, 548 P.2d 1085 (1976)).

date of valuation is the date of trial.[53] This rule is not absolute.[54] In *Brazil* the court stated "[t]he measure of damages is the fair market value of the property at the date of trial, unless fairness to the owner requires the value to be set as of some other date".[55]

In *Lange v. State*[56] this court considered whether the valuation date should be the date of trial or an earlier date. The court stated the general rule that property is valued on the date of trial, but observed the rule can be modified "when its application would be unfair in light of the particular circumstances".[57] In that case, the value of the property would have been substantially reduced if the date of valuation had been determined as the date of trial. The court reversed the trial court and remanded for further findings to properly determine the date of valuation,[58] noting that:

> [T]he practical effect of the State's action is that appellants suffered a loss in compensation due to the condemnation just as certainly as if the condemnation itself had caused the decline in his property's value.
>
> The loss was a direct consequence of the State's action since . . . the marketability of appellants' land was substantially impaired.[[59]]

The court stated that this conclusion was necessary to put the condemnee in the same "position monetarily as he

---

[53]See *Lange v. State*, 86 Wn.2d 585, 547 P.2d 282 (1976); *State v. Williams*, 68 Wn.2d 946, 416 P.2d 350 (1966); *Consolidated Diking Improvement Dist. 3 v. Davis*, 36 Wn. App. 125, 672 P.2d 414 (1983); *Walla Walla v. Conkey*, 6 Wn. App. 6, 492 P.2d 589 (1971), *review denied*, 80 Wn.2d 1007 (1972).

[54]*Lange v. State*, supra at 590-91.

[55]*Brazil*, at 496 (citing *Lange v. State*, 86 Wn.2d 585, 547 P.2d 282 (1976)).

[56]86 Wn.2d 585, 586, 547 P.2d 282 (1976).

[57]*Lange*, at 591.

[58]*Lange*, at 586.

[59]*Lange*, at 593.

would have occupied had his property not been taken"[60] and because "the condemnation activities themselves have depreciated property prior to the institution of formal eminent domain proceedings".[61] In reaching this conclusion the court stated:

> For the time of valuation to be advanced, marketability must be *substantially impaired* and the condemning authority must have evidenced an unequivocal intention to take the specific parcel of land. The special use of the land by the owner must be acquiring and holding the property for subsequent development and sale. Further, the owner must have taken active steps to accomplish this purpose. A property owner who purchased land or took steps to market it in contemplation of the condemnation could not insulate himself from a later general decline in market values and benefit from the holding in this case.[62]

(Emphasis added).

█ The Port argues in this case that the correct date of valuation is March 13, 1992, as determined by the trial court, because that was "the date of the Port's purchase, the date title passed, the date E[quitable] no longer assumed any ownership risks, . . . and the date on which the Port became irrevocably committed to the acquisition".[63] This case is distinguishable from *Lange* because Equitable had already received from the Port $12,075,000, the fair market value based upon the Port's highest appraisal. There was absolutely no contention that the property had deteriorated between March 13, 1992 and the date of trial, February 17, 1993. To the contrary, Equitable sought at trial to assert a fair market value of $70 million. Equitable cannot show that the valuation date determined by the trial court was in error or prejudicial. We conclude that the trial court was not in error in

---

[60]*Lange*, at 595.

[61]*Lange*, at 591.

[62]*Lange*, at 595.

[63]Br. of Resp't, at 85.

establishing the date of valuation as March 13, 1992 instead of the date of trial, February 17, 1993.

## Cross-Appeal by Port of Seattle

The Port claims that pursuant to RCW 4.84.330 the trial court erred in refusing to bilaterally apply the contractual attorney fees clause of the purchase and sale agreement.

RCW 4.84.330 provides:

> In *any action on a contract or lease* entered into after September 21, 1977, where such contract or lease specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or lease or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

> Attorney's fees provided for by this section shall not be subject to waiver by the parties to any contract or lease which is entered into after September 21, 1977. Any provision in any such contract or lease which provides for a waiver of attorney's fees is void.

> As used in this section "prevailing party" means the party in whose favor final judgment is rendered.

(Emphasis added).

However, the relevant clauses in the purchase and sale agreement provide:

> 12. *Closing Costs.*

> . . . .

> (b) Each party shall bear its own legal fees and costs required to complete this transaction, including all fees and costs incurred in any arbitration or eminent domain proceeding, except: (i) as otherwise provided in the case of a default under section 13 of this Agreement, and (ii) if the amount offered by the Port as the fair market value of the property thirty (30) days prior to commencement of trial is exceeded by the award at trial by ten percent (10%) or more, then Equitable shall be entitled to reasonable legal fees and costs *as if the parties were operating under RCW 8.25.070.*

. . . .

13. *Default.* In the event Equitable or Port shall bring any suit or action to enforce this Agreement or any term or provision hereof under this section, the prevailing party shall be entitled to a reasonable sum as attorneys fees and all costs and expenses incurred in connection with such suit or action. In the event the Port is represented in any such suit or action by public lawyers, reasonable attorneys fees shall be calculated at hourly rates comparable to those charged by lawyers of comparable experience in private practice in Seattle.[64]

Although the purchase and sale agreement does provide for attorney fees and costs incurred, the Agreement also provides that Equitable is entitled to receive reasonable attorney fees and costs under RCW 8.25.070. RCW 8.25.070 applies to actions in eminent domain and provides:

(1) Except as otherwise provided in subsection (3) of this section, if a trial is held for the fixing of the amount of compensation to be awarded to the owner or party having an interest in the property being condemned, the *court shall award the condemnee reasonable attorney's fees and reasonable expert witness fees in the event of any of the following:*

(a) If condemnor fails to make any written offer in settlement to condemnee at least thirty days prior to commencement of said trial; or

(b) If the judgment awarded as a result of the trial exceeds by ten percent or more the highest written offer in settlement submitted to those condemnees appearing in the action by condemnor in effect thirty days before the trial.

. . . .

(3) Reasonable attorney fees and reasonable expert witness fees authorized by this section shall be awarded only if the condemnee stipulates, if requested to do so in writing by the condemnor, to an order of immediate possession and use of the property being condemned within thirty days after receipt of the written request, or within fifteen days after the entry of an order adjudicating public use whichever is later and thereafter delivers possession of the property to the condem-

---

[64]Clerk's Papers, at 617.

nor upon the deposit in court of a warrant sufficient to pay the amount offered as provided by law. In the event, however, the condemnor does not request the condemnee to stipulate to an order of immediate possession and use prior to trial, the condemnee shall be entitled to an award of reasonable attorney fees and reasonable expert witness fees as authorized by subsections (1) and (2) of this section.

(Emphasis added).

■ Neither RCW 4.84.330 nor RCW 8.25.070 allows attorney fees for the Port. RCW 8.25.070 by its terms provides for award of attorney fees to *condemnees*. The Port is a condemnor and not a condemnee. RCW 8.25.070 thus does not authorize recovery of attorney fees and costs by the Port.

The Port suggests that RCW 4.84.330 applies because this is a contract action. It claims RCW 4.84.330 converts the unilateral attorney fees clause in the purchase and sale agreement into a bilateral provision. However, the language of the purchase and sale agreement allows characterization of this proceeding as one in eminent domain. The agreement states that "[e]ach party shall bear its own legal fees and costs required to complete this transaction, including all fees and costs incurred in any arbitration or eminent domain proceeding . . .".[65]

■ The language in the agreement the Port relies upon does not support its request for attorney fees under RCW 4.84.330. Despite the fact that the Port may be the "prevailing party" as defined under RCW 4.84.330, that statute is inapplicable under the terms of the purchase and sale agreement.

SUMMARY AND CONCLUSIONS

The trial court did not err in excluding the testimony of Dr. William E. Whitelaw, the Appellant's expert witness, on fair market value.

Neither did the court err in excluding the testimony of

---

[65]Clerk's Papers, at 616.

Thomas Dantzler on fair market value. Although Equitable correctly asserts that landowners have a right to testify concerning the fair market value of their property, that is not an absolute right. Mr. Dantzler's testimony was not based upon a reliable foundation. His opinion of fair market value of the property was reached by projecting millions of square feet of building space upon the speculation of building numerous high rise office towers and multiplying it by $12. He provided no method, reasoning, or explanation for the projected millions of square feet which, multiplied by $12, resulted in a fair market value of $33.6 million.

The trial court did not abuse its discretion in denying Equitable's motion for continuance. Under an abuse of discretion standard, the burden is upon appellant to establish that the denial was manifestly unreasonable. Equitable has not met this burden.

The Port in its cross-appeal claims that pursuant to RCW 4.84.330 the trial court erred in refusing to bilaterally apply the attorney fees clause of the purchase and sale agreement. The Port is mistaken. The parties are bound by the terms of the purchase and sale agreement. That agreement specifically characterizes this phase as an eminent domain proceeding, and provides that the parties are to apply RCW 8.25.070 in determining entitlement to attorney fees. At any rate, the Port is not entitled to attorney fees in this action under either RCW 4.84.330 or RCW 8.25.070. RCW 8.25.070 by its terms permits award of attorney fees to condemnees. The Port is not a condemnee, but a *condemnor* in this action. RCW 8.25.070 thus does not provide for its recovery of attorney fees and costs.

We affirm the decision of the King County Superior Court which granted summary judgment in favor of Respondent Port of Seattle based upon a jury determination of fair market value of $12,000,000. We also affirm the King County Superior Court's denial of attorney fees to Respondent.

DURHAM, C.J., DOLLIVER, GUY, JOHNSON, and MADSEN, JJ., and ANDERSEN, BRACHTENBACH, and UTTER, JJ. Pro Tem., concur.

Reconsideration denied September 7, 1995.