# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| PENINSULA HOUSING AUTHORITY, | No. 49772-7-II |
| Appellant, | |
| v. | |
| LEE ANN DANIELS, | UNPUBLISHED OPINION |
| Respondent. | |

SUTTON, J. — Peninsula Housing Authority (PHA) appeals the superior court's order awarding reduced attorney fees following an unlawful detainer action against Lee Ann Daniels. The PHA argues that the superior court erred when it awarded reduced attorney fees after considering Daniels's ability to pay. We hold that the lease provided for an award of "attorney fees as appropriate;" the superior court had the discretion to consider Daniels's ability to pay; the record supports the superior court's conclusion that Daniels had limited resources; and, thus, the trial court did not abuse its discretion by awarding reduced attorney fees to the PHA. Accordingly, we affirm.

## FACTS

### I. SHOW CAUSE HEARING AND INITIAL DENIAL OF ATTORNEY FEE REQUEST

Daniels, a disabled, divorced, 57-year-old woman, was a tenant in one of the housing programs the PHA administers. Although Daniels was eligible for supplemental security income

(SSI), she received $1,000 a month in spousal support in lieu of SSI. Daniels's ex-husband was often late in paying the spousal support.

When Daniels failed to pay her rent, the PHA filed an unlawful detainer action against her. On the day of the show cause hearing, Daniels paid a portion of the amount due into the court registry. That same day, her ex-husband attempted to make an online credit card payment for the balance due, but that attempt was unsuccessful because his credit card payments were not accepted.

The PHA agreed that if the funds due were deposited into the court registry, the PHA would not execute the writ of restitution, but it would still request that the superior court issue the writ. After the show cause hearing, the superior court issued the writ, stating that it was signing "the order for issuance of writ with the oral understanding that there'll be no execution on the writ, if the full amount of $941.00 is in the court registry by the end of the business day on Monday." Report of Proceedings (RP) at 14. The full amount was paid into the registry and the PHA did not execute the writ.

The PHA subsequently filed a motion for an award of $2,246.40 in attorney fees and costs as provided for under the lease. The lease provided, in part:

> Attorney, Court and Eviction Costs: In the event that a suit or action is brought by either party against the other, the Court shall award attorney fees and costs incurred *as appropriate*.

Clerk's Papers (CP) at 92 (emphasis added). Daniels asked the superior court to deny the request for attorney fees and costs based on equitable grounds because she did not have the ability to pay.

The superior court agreed with Daniels and refused to award the full amount of attorney fees that the PHA had requested. It reasoned that GR 34[1] and *City of Richland v. Wakefield*,[2] which limited the ability of superior courts to impose legal financial obligations against indigent criminal defendants, should extend to civil proceedings. The superior court noted that Daniels was living on approximately $1,000 a month and that she would be in no position to pay any attorney fees or costs.

## II. MOTION TO RECONSIDER THE ORDER AWARDING REDUCED ATTORNEY FEES

The PHA filed a motion to reconsider the superior court's order awarding reduced attorney fees. The PHA argued that (1) it was entitled to reasonable attorney fees under the lease and that its request was reasonable, (2) *Wakefield* did not apply to civil cases, (3) the superior court was required to award attorney fees and costs under RCW 4.84.330 and based on the language in the lease, and (4) Daniels's financial status and inability to pay had not been litigated and the issue of whether the PHA could enforce a judgment against Daniels due to her financial status was beyond the superior court's inherent authority.

Daniels responded that entry of a judgment for attorney fees in this matter was not equitable based on her financial status; that it would be financially impossible for her to pay the attorney fees and costs requested; and that the obligation would preclude her from qualifying for public housing and force her into the private housing market, which she could not afford. She further argued that an award of attorney fees and costs was not mandatory and that fees were not

---

[1] GR 34 provides for the waiver of court and clerk's fees and charges in civil matters based on a party's indigency.

[2] 186 Wn.2d 596, 380 P.3d 459 (2016).

appropriate given the "developing case law movement . . . recognizing the devastating impact fines and fees have on poor people." CP at 21-22.

The superior court agreed with the PHA that it had erred in failing to "apply[ ] the mandatory attorney's fees language of the lease and RCW 4.84.330." CP at 17. But it also concluded that it had "broad discretion" in determining the amount of the attorney fees and costs. CP at 18. The superior court acknowledged that the PHA had "not made an unreasonable request of the court with regard to attorney fees" and that the PHA's "attorney's time, rate of compensation and the like would be, under different conditions, justifiable." CP at 18.

But the superior court stated,

> Here, though, the lease language mandates an award of attorney fees "*as appropriate*." Nothing therein suggests that the court cannot consider the financial situation of a tenant when assessing attorney fees sought by a public housing authority. To award fees as requested, even though reasonable based upon an objective view measured against RPC 1.5[3] or *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 675 P.2d 193 (1983),[4] without consideration of the financial condition of the defendant, might consign the defendant to a continuation, or even possibly, a worsening, of her poverty and would, indeed, fly in the face of the goals of the plaintiff to provide affordable housing.

CP at 18 (emphasis added) (footnote omitted). The superior court again referenced (1) the current legal trend to avoid judicial impoverishment of litigants expressed in *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015) and *Wakefield*, (2) the rules for indigency in civil actions under GR 34,

---

[3] RCP 1.5 is the rule of professional conduct that addresses reasonable attorney fees.

[4] *Bowers* establishes the mechanism for determining reasonable attorney fees when attorney fees are awarded to a prevailing party. 100 Wn.2d at 593-601.

and (3) the expression of legislative intent in RCW 35.82.010(3)[5] and RCW 35.82.020(10),[6] demonstrating that the provision of "safe and sanitary dwelling accommodations for persons of low income" was a "governmental function[ ] of state concern," CP at 18. The superior court then awarded the PHA $100 in attorney fees.

The PHA appeals the attorney fees award.

ANALYSIS

The PHA challenges the superior court's order awarding reduced attorney fees of $100 to the PHA. The PHA argues that (1) the superior court erred when it concluded that the lease's attorney fees provision allowed the court to consider Daniels's financial status, (2) the superior court erred when it relied on *Wakefield* to not award the full amount of attorney fees requested due to Daniels's financial status, and (3) once the superior court determined that the fees and costs that the PHA requested were reasonable, it had no option but to award the PHA the full amount. The PHA also argues that the record does not support the superior court's finding of fact that Daniels would be unable to pay reasonable attorney fees. We hold that the superior court properly relied on the attorney fee provision in the lease, "the [c]ourt shall award attorney fees and costs incurred

---

[5] RCW 35.82.010(3) provides "that the clearance, replanning and reconstruction of the areas in which insanitary or unsafe housing conditions exist and the providing of safe and sanitary dwelling accommodations for persons of low income are public uses and purposes for which public money may be spent and private property acquired and are governmental functions of state concern."

[6] RCW 35.82.020(10) states, "'Persons of low income' shall mean persons or families who lack the amount of income which is necessary (as determined by the authority undertaking the housing project) to enable them, without financial assistance, to live in decent, safe and sanitary dwellings, without overcrowding."

as appropriate," to justify the reduction in attorney fees and that substantial evidence supports the superior court's findings of fact regarding Daniels's financial status.[7]

## I. LEGAL PRINCIPLES

We review a superior court's attorney fees award for an abuse of discretion. *Chuong Van Pham v. Seattle City Light*, 159 Wn.2d 527, 538, 151 P.3d 976 (2007). A court abuses its discretion if it "exercised its discretion on untenable grounds or for untenable reasons." *Chuong*, 159 Wn.2d at 538 (citing *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). Untenable reasons include errors of law. *Council House, Inc. v. Hawk*, 136 Wn. App. 153, 159, 147 P.3d 1305 (2006). The appellant has the burden of establishing an abuse of discretion. *Port of Seattle v. Equitable Capital Grp., Inc.*, 127 Wn.2d 202, 214, 898 P.2d 275 (1995), *superseded on other grounds by rule as stated in Ashley v. Hall,* 138 Wn.2d 151, 978 P.2d 1055 (1999).

"Washington generally follows the 'American rule' on attorney fees, which provides that attorney fees are not recoverable by the prevailing party as costs of litigation unless the recovery is permitted by contract, statute, or some recognized ground of equity." *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 143, 930 P.2d 288 (1997). Under RCW 4.84.330, "In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorneys' fees and costs, which are incurred to enforce the provisions of such contract or lease," the award of attorney fees and costs "is mandatory, with no discretion

---

[7] In her response, Daniels contends that the superior court's finding of fact that the PHA was the prevailing party was in error. Because Daniels has not filed a cross appeal, we do not address this argument.

except as to the amount." *Nw. Cascade, Inc. v. Unique Const., Inc.*, 187 Wn. App. 685, 705, 351 P.3d 172 (2015).

## II. LEASE AGREEMENT

Here, the basis of the attorney fee award was the attorney fee provision in the lease. Thus, we must examine whether the lease authorized the trial court to consider Daniels's financial status when determining the amount of attorney fees. This question requires an interpretation of the attorney fees provision in the lease.

## A. STANDARD OF REVIEW

"The interpretation of a lease is a question of law reviewed de novo." *Duvall Highlands LLC v. Elwell*, 104 Wn. App. 763, 771 n.18, 19 P.3d 1051 (2001). The rules of construction which apply to contracts also apply to leases. *Seattle-First Nat'l Bank v. Westlake Park Assocs.*, 42 Wn. App. 269, 272, 711 P.2d 361 (1985). "The goal of contract interpretation is to carry out the intent of the parties as manifested, if possible, by the parties' own contract language." *Dep't of Corr. v. Fluor Daniel, Inc.*, 160 Wn.2d 786, 795, 161 P.3d 372 (2007) (citing *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 504, 115 P.3d 262 (2005)).

Washington follows the objective theory of contracts, under which "we attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." *Hearst Commc'ns*, 154 Wn.2d at 503. We give the words in a contract "their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Hearst Commc'ns*, 154 at 504.

If we determine that a contract provision's meaning is subject to more than one interpretation or is otherwise uncertain, we may find that the provision is ambiguous. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 713, 334 P.3d 116 (2014). We construe ambiguities in a contract against the drafter, here the PHA. *Viking Bank*, 183 Wn. App. at 713.

B. INTERPRETATION OF ATTORNEY FEES PROVISION

As described above, the attorney fees provision in the lease provides in part:

Attorney, Court and Eviction Costs: In the event that a suit or action is brought by either party against the other, the Court shall award attorney fees and costs incurred *as appropriate*.

CP at 92 (emphasis added). The key phrase we are interpreting here is "as appropriate." CP at 92.

The PHA asserts that the superior court's broad interpretation of this language to allow for consideration of Daniels's financial status "essentially re-wrote the lease agreement, undermining contract law theories and creating unpredictability in the lease agreement." Br. of Appellant at 14. PHA does not, however, explain how the "as appropriate" language should be interpreted or why the lease uses this phrase rather than providing for "reasonable" attorney fees.

Instead, citing several cases, the PHA argues that the superior court was limited to determining whether the fees were "reasonable." Br. of Appellant at 6-7. But in each of the cases the PHA cites, the authority for imposing attorney fees expressly referred to "reasonable" attorney fees. *Singleton v. Frost*, 108 Wn.2d 723, 729, 742 P.2d 1224 (1987) (promissory note provided for "reasonable attorney's fees"); *Bowers*, 100 Wn.2d at 585 (RCW 19.86.090 allowed "reasonable attorney's fee[s]"); *Nw. Cascade, Inc.*, 187 Wn. App. at 704 (contract provided for "reasonable attorneys' fees."); *Kofmehl v. Steelman*, 80 Wn. App. 279, 286, 908 P.2d 391 (1996) (contract provided for "reasonable" attorney fees); Br. of Appellant at 6-7. These cases all rely on the

specific authorizing language using the term "reasonable"—they do not examine whether "reasonable" fees can be the only standard for awarding attorney fees, particularly when there is different language in the authorizing contract or lease.

Here, in contrast, the document authorizing attorney fees, the lease, does not provide for "reasonable" attorney fees, it provides for an award of attorney fees "as appropriate." CP at 92. And the PHA does not cite any authority that establishes that the parties cannot agree to a different standard, nor does the PHA discuss the meaning of "appropriate" when such term is used in lieu of "reasonable."

The PHA also argues that *Bowers* does not allow the superior court to consider a party's financial status. The PHA is correct that *Bowers* does not include the non-prevailing party's financial status as a factor when determining what constitutes reasonable attorney fees. But, again, *Bowers* focuses on how to determine if the requested fees are reasonable given the nature of the case; it does not state that a court cannot consider the non-prevailing party's financial status if the lease or contract permits such a determination.

Here, it was not unreasonable for the superior court to have relied on the "as appropriate" language as grounds for examining the fees in light of Daniels's financial status. The dictionary definitions demonstrate that "reasonable" and "appropriate" have subtly different meanings. "Reasonable" means "being in agreement with right thinking or right judgment: not conflicting with reason: not absurd: not ridiculous . . . being or remaining within the bounds of reason: not extreme: not excessive." WEBSTER'S THIRD NEW INT'L DICTIONARY 1892 (2002). Whereas, "appropriate" can mean something is "*specially* suitable." WEBSTER'S at 106 (emphasis added). These definitions suggest that if something is appropriate, it can be more tailored to specific

9

circumstances than something that is otherwise reasonable. Thus, at best, the use of the phrase "as appropriate" is ambiguous and must be construed against PHA and in Daniels's favor. *Viking Bank*, 183 Wn. App. at 713 (we construe ambiguities in a contract against the drafter).

It is entirely possible that something that is objectively reasonable could be wholly inappropriate under specific circumstances. And here the superior court recognized that distinction when it found that the amount of the fees requested was objectively reasonable given the work done by the PHA's attorneys, but the court still found that assessing the full amount of the fees requested against Daniels was inappropriate based on her financial status. We hold that the PHA has failed to establish that the superior court's decision to reduce the PHA's attorney fees based on Daniels's financial status was an abuse of discretion.[8, 9]

### III. SUPPORT FOR SUPERIOR COURT'S FINDING OF FACT

The PHA further argues that even if we conclude that the superior court had the authority to award reduced attorney fees, the record does not support the superior court's finding of fact that Daniels would be unable to pay reasonable attorney fees. We disagree.

---

[8] Because we rely on our interpretation of the attorney fees provision in the lease, we do not address whether the superior court's reliance on *Wakefield* was appropriate.

[9] The PHA also argues that allowing this interpretation of the lease makes contract enforcement unpredictable and undermines fundamental principles of contract law. In holding that the language of this lease is ambiguous and interpreting this language in Daniels's favor, we are following basic principles of contract interpretation and not undermining fundamental principles of contract law.

No. 49772-7-II

We review the superior court's findings of fact to determine whether they are supported by substantial evidence. *Panorama Vill. Homeowners Ass'n v. Golden Rule Roofing, Inc.*, 102 Wn. App. 422, 425, 10 P.3d 417 (2000). Substantial evidence is "'defined as a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true.'" *Korst v. McMahon*, 136 Wn. App. 202, 206, 148 P.3d 1081 (2006) (quoting *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003)).

Here, although there was not a tremendous amount of detail in the record regarding Daniels's financial status, the record does show that she was (1) disabled, (2) eligible for SSI, (3) living off of $1,000 in monthly spousal support (which payment was often late), and (4) often had difficulty making her rent payments. This evidence is sufficient to persuade a rational, fair-minded person that imposing more than $100 in attorney fees and costs would be a financial hardship for Daniels. Thus, the PHA's argument that this finding of fact is not supported by the record fails.

Because the PHA has failed to establish that the superior court abused its discretion when it reduced the PHA's attorney fees based on Daniels's financial status or that the record did not support the superior court's finding of fact regarding Daniels's financial status, we affirm.

IV. ATTORNEY FEES AND COSTS

Finally, Daniels requests attorney fees and costs for pursuing this appeal under RAP 18.1 and RCW 4.84.330. Ironically, the PHA argues that an attorney fees award against a public housing authority with a limited budget "would not be *appropriate* in this matter." Reply Br. at 6 (emphasis added).

Under RCW 4.84.330 and the lease, as the prevailing party on appeal, Daniels is entitled to an award of appellate fees and costs "as appropriate." CP at 92. Accordingly, we grant Daniels

No. 49772-7-II

request for attorney fees and costs upon her compliance with RAP 18.1. A commissioner of this court will determine the amount of the award and whether that award is appropriate under these circumstances. RAP 18.1(f).

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

WORSWICK, P.J.

LEE, J.